# CHARLESTON.

National Metal Edge Box Co. v. The Hub.

Submitted September 20, 1921.   Decided September 27, 1921:

1.   Trial—*Special Jury Findings Must be Inconsistent with Verdict to be Controlling.*

Special findings of a jury must be inconsistent with the verdict in order to be controlling, and such inconsistency must appear after excluding every .reasonable conclusion that would authorize the verdict.   (p. 104).

2.   Appeal and Error—*Under the Condition of the Record, Held That the Evidence Will be Considered to Determine Relevancy of Special Findings.*

In assumpsit where the declaration contains the common counts only, with bill of particulars filed, and defendant pleads the general issue without filing particular grounds of defense, and there is a verdict for plaintiff accompanied by special findings relative to some controversy not fully ascertainable from the pleadings, the court will inspect and consider the evidence in order to ascertain the relevancy of such special findings, and to throw light upon their consistency or inconsistency with the verdict.   (p. 107).

3.   Same—*Evidence Considered to Determine Whether There was a Real Conflict Between Special Findings and Verdict for Plaintiff.*

Where the verdict is for plaintiff in an action of assumpsit for pasteboard boxes sold, and delivered, on which certain

printing in brown ink was ordered, accompanied by a special finding that the printing was not done by plaintiff in a workmanlike manner for the purposes intended, such special finding is not necesarily in irreconcilable conflict with the verdict, as it does not preclude a waiver of inferior workmanship in the printing by the defendant; and where the pleadings do not specifically raise this issue, the court will consider the evidence in order to interpret the special finding, and ascertain if there be any real conflict with the verdict.   (p. 108).

Error to Circuit Court, Ohio County.

Action by the National Metal Edge Box Company against The Hub.    Verdict and judgment for plaintiff, and the defendant brings error.

*Affirmed.*

*James W. Ewing, G. Alan Garden* and *J. Bernard Handlan,* for plaintiff in error.

*A. E. Bryant,* for defendant in error.

LIVELY, JUDGE:

Judgment for plaintiff having been rendered on a verdict accompanied by answers to special interrogatories, defendant prosecutes this writ of error.

Plaintiff received an order from defendant for eleven thousand pasteboard boxes to be used for the purpose of containing clothing and other merchandise in which defendant's customers could carry away purchases made by them.    The order was for three sizes to be made of gray granite jute board, (same material as defendant had for several years purchased from plaintiff) with certain printing, "printed top and bottom as had (formerly printed) with exception printed with Brown Ink in place of Blue."    The total price for this order amounted to $394.40, the amount for which this action was afterwards instituted.    Defendant, for six or seven years prior to this order given in 1913, had been purchasing similar boxes from plaintiff, with the same printing thereon in blue, but having changed its other advertising matter to brown, desired the printing on these boxes to be of like

color—hence the notation on the order, "printed with Brown Ink in place of Blue." It is over this change in the color of the printing that this litigation arises. Upon the receipt of the first shipment of 6,150 boxes, defendant, The Hub, promptly wired plaintiff, the Box Company: "Let us know what disposition you want us to make of boxes just received, they are printed in red in place of brown as ordered and we cannot use same. Answer at once." This telegram was followed by a letter of the same import to the effect that the boxes were printed in red instead of brown as ordered; that the boxes would not be used for that reason, and asking for instructions to be given the transportation company to which the boxes had been returned. The box company immediately replied that it had followed the instructions contained in the order and had used a printing ink known as Brown No. 2110X prepared by Johnson & Co., ink manufacturers and dealers; that upon inquiry at their factory they found that 2000 more of the boxes had been prepared and printed with the same ink, but that if The Hub wanted the remainder of the order printed in any other color of ink, the same would be promptly filled, and asking The Hub to reconsider and use those already sent, and those already cut and printed at the factory. Considerable correspondence followed, the Hub insisting that the color of the printing was not what was wanted, and the box company insisting that the printing was in brown ink as ordered. Finally The Hub refused to take or pay for any of the boxes, placed the same order elsewhere at a less price, and invited litigation to test liability. The defendant, The Hub, in all this correspondence placed the refusal solely upon the reason that the color was not what was ordered. No claim was made by it that the material used in the boxes or workmanship in the printing was not satisfactory. The claim of inferior material and unworkmanlike manner of printing was not made or attempted to be asserted until after the first trial in 1914, when the jury failed to agree. Action of assumpsit was promptly instituted, the declaration containing the common counts only, defendant asked for bill of particulars, which was furnished, the general issue of non assumpsit was

pleaded, and the case went to trial in 1914 and the jury disagreed. The following year another trial was had on the same pleadings and the jury disagreed. The following year this trial was had, resulting in a verdict and judgment for plaintiff for $190.00. Interrogatories were asked by the plaintiff and given to the jury and answered as follows:

"Question 1. 'Did the plaintiff, in furnishing the quality of material used in the boxes, substantially comply with the terms and conditions of the order:

"Answer. Yes. "Fred F. Cowl, Foreman.'

"Question 2. 'Did the plaintiff, in printing the boxes in question, print them in a workmanlike manner for the purposes intended?

"Answer. No.

"Fred F. Cowl, Foreman.'

"Question 3. 'Did the plaintiff, in printing the boxes in question, use the ink whose color is classed as brown?

"Answer. Yes.

"Fred F. Cowl, Foreman."

Defendant moved for judgment notwithstanding the verdict on the ground that the answer to Question 2 being in the negative was inconsistent with the general verdict and was controlling. The motion was overruled and defendant excepted. Other motions, including one for new trial, were overruled and exceptions taken. Exceptions were also taken to the action of the court in giving and refusing to give instructions. These are all assigned as error, but none of them is pressed here in argument except assignment No. 4, relating to the refusal of the court to enter judgment for defendant, notwithstanding the general verdict, because of the answer to Question 2, which is asserted to be controlling; and, under the well known rule of this court, only that assignment of error will be considered, the others not being briefed or insisted upon in argument.

It may be stated here that the main controversy seems to have been over the color of the printing, quite a number of expert witnesses having been examined on each side, some testifying that the color was red, others maroon, and others

brown.    Samples of the printing were exhibited to the jury, which found that the ink used was of a color classed as brown.    The order for the boxes required the printing to be "with Brown Ink in place of Blue."

Defendant insists that in considering its 4th assignment of error this court should follow the dicta found in the opinion of Judge HOLT in the case of *Penninsular Land Co.* v. *Franklin Ins. Co.,* 35 W. Va. 666, which reads: "Upon motion for judgment no question is entertained as to their inconsistency with the evidence nor is the evidence considered, but only the pleadings, special findings, and general verdict." It will be seen that Judge HOLT took his epitome of the rules and proceedings, where special findings are sought, from Thompson on Trials, who bases his text upon certain decisions of the Indiana Supreme Court.    It may be instructive to examine these decisions.    They indicate that the evidence will not be reviewed, but, if from inspection of the pleadings, the special findings, and the verdict, it may be seen that any antagonism between the special findings and the verdict could have been removed by any legitimate evidence admissible under the issue, then the verdict will be upheld, and the apparent inconsistency repelled.    They seem to consider evidence given, which might have been given.    The tendency is to uphold the verdict upon any reasonable theory, or view, that will harmonize the special finding therewith. We cannot see why the evidence cannot be inspected and considered if light may be given thereby, especially where the pleadings are general and it is not clear therefrom what cause induced the special inquiry.

*Murray* v. *Phillips,* 59 Ind. 56, holds, that where the special findings are not inconsistent with the general verdict, then a motion for judgment on the special findings will not be sustained on the ground that the special findings are not in accord with the evidence.    It is apparent that there would be no necessity or propriety in going to the evidence for any purpose, the special finding being in accord with the general verdict.

In *Cox* v. *Ratliff,* 105 Ind. 374, a suit for possession of land, the special findings were to the effect that plaintiff

had legal title to the land, but that there was an agreement between the parties that defendant should have a reconveyance of the land if he paid to plaintiff the money he had paid out and expended.     The general verdict was for the defendant.     The plaintiff moved for judgment on the special findings, "and documentary evidence in the cause," which motion the court denied, holding that the special findings were not necessarily inconsistent with the general verdict.     The defendant might have been lawfully entitled to the possession notwithstanding plaintiff's legal title as shown by the documentary evidence.

In *Pennsylvania* v. *Smith,* 98 Ind. 42, the court held that in reviewing a ruling on motion for judgment upon answers to interrogatories notwithstanding the general verdict, the evidence could not be inspected, but in order that the answers must control and override the verdict, there must be between them an antagonism *which could not be removed by any evidence admissible under the issue.* While the court would not inspect the evidence, it would presume that evidence had gone to the jury sufficient to override an antagonism, if the antagonism was such as could have been removed by evidence. The court presumes that done which might have been done.

In *Pittsburgh, Cin. & St. L. Ry. Co.* v. *Martin,* 82 Ind. 476, it was held:     "In considering a motion for judgment on special findings, notwithstanding a general verdict, no reference can be had to the evidence given, but if by any conceivable evidence admissible under the issues, the special findings can be reconciled with the general verdict, the motion should be denied."     The court further said, p. 480, "The general verdict prevails over the special findings, if there could have been, under the issues, proof of supposable facts, not inconsistent with those specially found, sufficient to reconcile the general verdict with the special findings." Citing various authorities.

In *Peninsular Land Co.* v. *Franklin Ins. Co., supra,* the refusal of the lower court to permit certain interrogatories to go to the jury was under review, and Judge Holt held that even if the questions had been answered in favor of the defendant their apparent antagonism to the verdict could have

been reconciled by evidence properly admitted under the issues.    The suit was on an insurance policy, and interrogatories were asked and refused, which, if submitted and answered in the affirmative (favorably to defendant) would have found that notice of the loss was not given by the assured forthwith, and due diligence was not exercised in giving notice of loss; and that no reason existed for the delay in giving such notice.    Notice of loss under the policy was vital to recovery.    And the court said, "But may not the general verdict say the giving of any notice or a more timely notice was waived by the defendant, if there was any evidence tending to show such waiver, and thus render such special finding immaterial?"    Another group of questions if given and answered most favorably to defendant was to the effect that the assured had not given a particular account of the loss within thirty days, nor a particular account within a reasonable time thereafter, and that there was no reason for such delay.    Judge. Holt held that such findings would not necessarily be inconsistent with the verdict, if there was any tendency of any evidence, reasonably and fairly considered, to show a waiver of these policy requirements.    The issue on this group of questions was made up by plaintiff's pleading, wherein it specially replied and relied upon a waiver. Then the Judge reviewed the testimony and found no evidence of a waiver and concluded that this    group of interrogatories should have been given, the pleadings having made an issue, a vital issue, of the matters covered by these interrogatories. In the very case where the dicta above quoted is found, the Judge considered the evidence to see if the proposed interrogatories were pertinent.

Is it necessary to look to the evidence in the case at bar? Can we say that the answer to interrogatory No. 2 is irreconcilably inconsistent with the verdict, and therefore controlling?  We must remember that special findings only override the verdict when both cannot stand, and the antagonism must be apparent on the face of the record, beyond the possibility of being removed by any evidence legitimately admissible under the issue, before judgment can be rendered non obstante veredicto.  2 Thompson on Trials (2nd ed.)

sec. 2691. In view of this salutary principle, can we say
that this special finding that the plaintiff did not print the
boxes in a workmanlike manner for the purposes intended
is necessarily inconsistent with and controlling of the verdict
under the issue? Could there have been a waiver by the
defendant, either express or implied, of this deficiency in the
workmanship in the printing? Let us consider this ques-
tion of waiver. ''Strict compliance with the terms of a con-
tract on the part of one party may be waived by the other
either expressly or by acts or declarations indicating a re-
linquishment of the provisions of the contract. And
where a party makes specific objections to the sufficiency of
performance he is held to waive any other objections he may
have.'' C. J., Vol. 13, p. 694, title ''Waiver of Defects.''
Any party to a contract for whose benefit anything there-
under is to be done may dispense with any part of it or cir-
cumstance in the mode of performance. 6 R. C. L. sec. 358.
We think it well settled that a waiver of the benefit of any
part of a contract may be made. Then if such waiver could
have been shown, would the fact that the printing was not
done in a workmanlike manner, as found by answer to inter-
rogatory No. 2, be controlling of the verdict? It would not
be, if we follow the rule laid down by the Indiana courts.
The interrogatory could have been properly refused. ''Such
judgment (on special findings) is enterable only when the
special findings and the general verdict cannot be reconciled
with each other, under any supposable facts provable under
the issues.'' 15 R. C. L. p. 609, sec. 49. Special findings
will not control the verdict unless invincibly opposed to it.
No presumptions will be allowed in their favor. 2 Thomp-
son on Trials, sec. 2693. The Indiana rule would make it
not necessary to look at the evidence. But the action is in
assumpsit on the common counts with bill of particulars,
to which defendant pleaded the general issue, which does not
give any intimation of any special ground of defense, and
the question of the workmanship in the printing is not sharp-
ly drawn by the pleadings; and we think, under such plead-
ings, that the evidence ought to be looked to in order to ascer-
tain the relevancy and effect of such finding. We are not in

accord with the holding of the Indiana court, especially
where the pleadings are so general as to make it necessary to
intelligently ascertain the issue or contention which inspired
the interrogatory.     And when we look to the evidence, as
was done by Judge HOLT in *Peninsular Land Co.* v. *Franklin
Ins. Co., supra,* in order to ascertain if certain interrogator-
ies should have been given, we find ample proof that   de-
fendant, in the inception, when the first shipment of boxes
was delivered, made no objection to the workmanship in the
printing, but repeatedly stated, as sole cause for refusal, that
the printing was in red, and not in brown as it intended to
order, and the record shows that no claim or defense of de-
fective workmanship was made until after the first trial in
1914, when the jury failed to agree.     It was clearly a de-
fense afterwards thought of to defeat recovery. ''Where
a party gives a reason for his conduct and decision, touching
anything involved in a controversy, he cannot after litiga-
tion has begun, change his ground and put his conduct upon
another different consideration.'' *Hixon Map Co.* v. *Nebraska
Post Co.,* 98 N. W. 872, citing *Ohio M. R. Co.* v. *McCarthy,*
96 U. S. 258; *Frenzer* v. *Dufrene,* 58 Neb. 432; *Ballou*   v.
*Sherwood,* 32 Neb. 666.     The same principle is announced
in *Bradley* v. *Cole,* 6 Hun. 660; *Olcese* v. *Mobile Fruit and
Trading Co.,* 211 Ill. 539.     Moreover, similar boxes and simi-
lar printing (except in blue) had been furnished to defend-
ant by plaintiff for about seven years prior to this delivery,
without objection or question as to quality or printing, and
the plaintiff was, under this order, which specifically stated
''same as had,'' only required to deliver the boxes reasonably
fit for the purposes for which they were to be used.     So, it
is a reasonable conclusion, warranted by the evidence, that
although the jury, in response to the interrogatory found that
the workmanship in printing the boxes was not up to stand-
ard, yet the jury could find that plaintiff was not required
to make them conform to any particular standard, or that de-
fendant had waived this defect and his defense based thereon,
and consequently the verdict should be for plaintiff.     It is
significant to note that although the first shipment of 6,150
boxes and the 2000 boxes made, printed and not delivered on

account of refusal to accept, amounted to $283.20, the jury found in the sum of $190.00, which is $93.20 less than they might have found.    Some reason existed for this reduction of the agreed purchase price.    Hence, in the light of the evidence upon this issue of good workmanship, we cannot say that the reply to interrogatories is irreconcilable with the general verdict.    The special finding must exclude every reasonable conclusion that will authorize a recovery on the verdict.

Further evidencing that the reply to interrogatory No. 2 is not irreconcilable with the verdict is the fact that by instruction No. 2, given to the jury on behalf of the defendant, the court told the jury that if plaintiff ''did not print the boxes ordered by The Hub in brown ink, or did not print the same on granite gray jute board, or did not do such printing in a workmanlike manner, the defendant was justified in refusing the shipment when it was received, and is not obliged or bound to pay for the same.''    Evidently the jury found that plaintiff had done the printing in a workmanlike manner sufficient under the circumstances, and for the purposes for which they were printed; or considered that defendant had waived that defect if any, and found for plaintiff, and yet could consistently say with their verdict that the printing was not done in a workmanlike manner.

But it is insisted that because the court did not require specification of defense under sec. 46, chap. 130, Code, and because plaintiff did not object to the evidence of defendant's witnesses on the question of good workmanship, when tendered, it made an issue and ought to be bound thereby.    The answer to this contention is that plaintiff, by its evidence to support its account for goods sold and delivered, showed that defendant had refused to accept the goods for the sole reason that the printing was red instead of brown, and as a legal consequence had thereby waived its after discovered defense of bad workmanship.    Until it was shown that defendant had not waived this defense, the question of inferior workmanship in the printing was immaterial, and any controversy or issue thereon was false, confusing and improperly raised.    It often occurs in the hurry and confusion of jury

trials that irrelevant and improper evidence goes to the jury without objection, or without being perceived by the court. The defendant originated this false issue, but the jury, while responding to it, did not lose sight of the true issue, and rendered its verdict accordingly.

We hold that the special finding of the jury is not inconsistent and irreconciliable with the verdict, under the pleadings and evidence, and affirm the judgment entered on the 13th of May, 1920.

*Affirmed.*