# CHARLESTON.

ANDREW TROBIE V. RITER-CONLEY COMPANY.

Submitted September 20, 1921.    Decided September 27, 1921

1. TRIAL—*Special Verdict Will Not Overthrow General Verdict Unless Findings are Irreconciliably Inconsistent.*

   A special verdict, made up of interrogatories and the answers of the jury thereto, will not overthrow a general verdict, unless such special findings are irreconciliably inconsistent with such general verdict, and clearly exclude every conclusion that will harmonize the special findings with the general verdict.    (p. 126).

2. MASTER AND SERVANT—*Special Finding Held Not in Conflict With General Verdict; Care Required of Master Defined.*

   A special finding by a jury that the master, in the performance of certain work, has exercised that care which his foreman in charge of the work considers sufficient for his own protection, as well as for that of the other employes, is not in conflict with a general verdict in favor of the plaintiff.    The due care required of the master is that care which a man of ordinary prudence would exercise in the performance of the particular work, and not what any particular man pointed out by the defendant believes to be ordinary care.    (p. 126).

3. SAME—*Negligence in Doing Work in Charge of Foreman Question for Jury.*

   The question whether or not the master has exercised due care towards his servants in the doing of a particular work in which they are engaged is ordinarily for the jury, and the fact that the jury may believe that the defendant's foreman in charge of the work exercised such care as he considered to be proper under the circumstances, does not preclude a finding that the master was guilty of negligence in the performance of his duty in that regard.    (p. 126).

4. APPEAL AND ERROR—*Where the General Charges Pleaded were Reduced to Specific Fact Issues by Evidence, Evidence May be considered When Interpreting an Interrogatory.*

   While ordinarily in the interpretation of a special verdict, made up of interrogatories and the jury's answers thereto, the court may look only to the pleadings, the general verdict, the special interrogatories and the answers thereto, still where the pleadings are general in their nature, and the parties by the

evidence introduced in the case have reduced these general charges to a specific and definite issue of fact, the court may, in interpreting an interrogatory, look to the evidence to determine exactly what the issue was between the parties upon the trial before the jury.  (p. 131).

Error to Circuit Court, Ohio County.

Action by Andrew Trobie against the Riter-Conley Company.  Judgment for plaintiff, and the defendant brings error.

*Affirmed.*

*Hubbard & Hubbard* and *Erskine, Palmer & Curl,* for plaintiff in error.

*J. Bernard Handlan, G. Alan Garden,* and *P. J. McGinley,* for defendant in error.

RITZ, PRESIDENT:

This writ of error brings up for review a judgment of the circuit court of Ohio county in favor of the plaintiff for damages for a personal injury received by him while in defendant's employ.

The defendant, a contracting company, was engaged in making repairs to a furnace of the Wheeling Steel & Iron Company, and as part of the work it was necessary to remove from the furnace certain refuse matter which had accumulated at the bottom thereof.  It appears that this matter had formed a solid mass, and before it could be removed it had to be broken up with charges of dynamite, and then the pieces raised out of the furnace and conveyed away. This matter is called in the record a salamander.    At the time the accident happened to the plaintiff the salamander had been broken up and considerable thereof had been removed, and the defendant was engaged in removing the remainder.  In doing this work blocks were fastened up in the furnace and the pieces of the salamander being removed were raised by this means to the level of the ground surrounding the furnace, and then another rope, called an outhaul, was attached to the cable by which the salamander was suspended, and by means of blocks used in connection with the outhaul

rope the salamander was pulled horizontally to a point without the furnace, and there dropped on the ground to be further removed by other means. On the occasion of the accident resulting in plaintiff's injury the piece of salamander being removed had been raised vertically to the desired height, and the outhaul rope had been attached to the appliances, which had theretofore engaged the salamander, by means of a large iron hook fastened in a block through which the outhaul rope operated, and the power had been applied at the other end of the outhaul rope, and the salamander had been pulled out about three feet from the vertical position, when the hook which fastened the outhaul apparatus to the cables supporting the salamander suddenly broke, and the block to which this hook was attached, being thus suddenly released from the strain upon it, flew with great violence against the plaintiff, striking him on the left side of the face, knocking out his left eye, and otherwise severely injuring him.

The plaintiff brought this suit charging in his declaration that the defendant was negligent: First, in that it did not use ordinary care, diligence and skill in doing the work; Second, in that it did not provide reasonably safe, proper and fit machinery and appliances; Third, in that it did not reasonably and seasonably inspect the machinery, appliances and instrumentalities; Fourth, because it did not maintain the machinery and appliances in a fit and suitable condition for doing the work; Fifth, because it subjected the machinery and appliances to a greater strain than they were suitable to withstand and resist; Sixth, because it selected incompetent servants and employes for carrying on this work. Upon a trial a general verdict was rendered in favor of the plaintiff for the sum of five thousand dollars, and the jury answered five certain interrogatories submitted to them, said interrogatories and the answers thereto being as follows:

"1. Was the injury proximately caused by the breaking of the hook? Answer. Yes. 2. Did the foreman Drummond have reason to expect the breaking of the hook? Answer: No. 3. At the time of the accident was the plaintiff in as safe a position as the foreman Drummond? Answer:

No. 4. Did the foreman take the same care to provide for the safety of the plaintiff as for his own safety? Answer: Yes. 5. Were the plaintiff's injuries proximately caused by reason of any incompetency on the part of the man at the nigger-head handling the outhauling rope? Answer: No.''

The defendant moved the court to render judgment in its favor upon the special verdict consisting of the interrogatories and the answers thereto, upon the ground that such answers were entirely inconsistent with the general verdict, and decided the issues involved in its favor; and, if this motion should be overruled, then that the verdict of the jury be set aside upon the ground that the court had misdirected the jury on motion of the plaintiff. The circuit court successively overruled each of these motions and rendered judgment in favor of the plaintiff on the general verdict.

Upon this writ of error the defendant assigned as error the action of the court in refusing to render judgment in its favor upon the special verdict, and also the refusal of the court to set aside the verdict upon the ground of misdirection of the jury. Upon the hearing it has withdrawn the latter assignment of error, and desires to stand solely upon the contention that it is entitled to a judgment in its favor upon the special findings. It contends that the answers to the interrogatories decide every issue raised in the case in its favor, and are in irreconciliable conflict with the general verdict. If this contention is correct, of course it is entitled to a judgment upon the special verdict, notwithstanding the general verdict.

The defendant insists that in considering the question whether or not the answers to the interrogatories are in conflict with the general verdict, nothing but the pleadings, the special findings, and the general verdict may be looked to, and cites the case of *Penninsular Land Co.* v. *Franklin Ins. Co.,* 35 W. Va. 666, to support this contention. The judge delivering the opinion in that case did make use of the language quoted by counsel, but it may not be susceptible of as literal interpretation as counsel would give it. However, suppose we consider the answers to the interrogatories in conection

only with the declaration and the general verdict.    The effect of the general verdict, of course, is to find that the defendant was guilty of negligence in some one or all of the particulars averred in the declaration, and that this negligence was the efficient cause of the plaintiff's injury.    Do the answers to the interrogatories negative this view?

The first interrogatory is, "Was the injury proximately caused by the breaking of the hook?" to which the jury answered, "Yes."    Of course, it is perfectly patent that this question and answer determined nothing of importance in this case.    It is clear that when the jury stated that the breaking of the hook proximately caused the injury it meant no more than that the plaintiff's injury was occasioned by the hook breaking, which permitted the block to fly and hit him in the face.    It did not and could not mean that the hook was the efficient cause of the injury.    This language is not used in the question in the sense in which it is ordinarily used in the law of negligence.    Every count in the declaration alleges that the plaintiff's injury was produced from a blow received by him from the block which was released by the breaking of the hook.    The pertinent inqury was, what caused the hook to break, and no special interrogatory propounds this question to the jury.

But the defendant urges that the answer to the second interrogatory is conclusive of every issue in its favor when read in connection with the answer to the first of such interrogatories.    The second interrogatory is, "Did the foreman Drummond have reason to expect the breaking of the hook?" and the answer thereto is, "No."    Looking to the pleadings alone we cannot see just what relavency the expectations of the foreman Drummond might have.    The pleadings do not refer to him, nor does it appear therefrom how his conduct and expectations might in any way control the case in favor of the defendant.    It may be assumed from the interrogatory that he was a foreman of the defendant on the work, but whether in the full charge of it or not does not appear, except from the evidence, which counsel say we cannot look to.    It must be borne in mind that the declaration charges negligence in several different particulars.    It might be, so

far as the pleadings are concerned, that the duty of an inspection of the appliances did not devolve upon foreman Drummond, or that the duty of controlling certain parts of the work did not devolve upon him, or that the duty of providing reasonably efficient means for doing the work did not devolve upon him, and if his duties as a foreman did not include any or all of these things then, of course, he would have a right to assume that they had been properly performed by the defendant, and would have no reason to contemplate an accident therefrom, unless he had actual knowledge that the party charged with the performance of them, or some of them, had been derelict in his duty.     To understand the effect of this interrogatory it is necessary to look to the evidence.     When we do this we find that foreman Drummond, referred to in the interrogatory, was in sole and exclusive charge of this work.     He was charged with the duty of employing the men and seeing that the work was properly done, and proper appliances used for the doing of it, and these appliances properly and seasonably inspected.     But even then, is the answer to the interrogatory inconsistent with the general verdict?     We find both from the pleadings and the evidence that one of the principal grounds upon which the action is based is the alleged failure of the defendant to properly inspect the hook which broke prior to the accident.     We also find that another basis for the action is that due care was not being used in the doing of the work, which lack of due care resulted in the breaking of the hook and the consequent injury to the plaintiff.     We find upon further examination that there was a defect in this hook at the point where it broke which some of the witnesses testify was observable from an examination of the hook before it broke, and even the witness which the defendant introduced for the purpose of showing that the defect was a latent one and undiscoverable, upon being shown the hook testified that he was not able to say that a careful inspection of it before it broke would not have discovered the defect.     Now Drummond says he did inspect all of the machinery on the 28th day of every month, except such of it as was actually in use at the time, and which could not be easily inspected, and that he also

made some kind of an inspection or examination of each piece of machinery and each appliance at the time it was put in use, and that nothing was discovered wrong with this hook. This accident occurred on the 11th of December, so that the last general inspection before this time would have been on the 28th of November. Whether this particular hook was inspected at that time does not appear.    Many of the appliances were at that time actually in use, and this hook may have been so in use at that time, and not have received any inspection then.    Whether it was inspected at that time or not, it is apparent that there was a defect in it, and from the evidence the jury could very well find, in fact we may say that the weight of the evidence is to the effect, that a careful inspection of the hook would have disclosed the defect prior to the accident.    The material question then is, was the hook subjected to that reasonable inspection which the law requires?    The answer to the interrogatory finds that Drummond did not have reason to expect the hook to break, and it is argued that it necessarily follows from this answer that the hook had received the reasonable inspection required by the law.    This does not follow at all.    The most that can be said for this answer is that in Drummond's opinion he had submitted the hook to reasonable inspection, and from that inspection he had no reason to expect the breaking of the hook.    But to make this conclusive of the issue involved would make Drummond's opinion of what was a reasonable inspection binding upon the jury.    This is not the law. The answer to the interrogatory does not preclude the jury from finding that the hook was not reasonably inspected prior to the accident.    All that can be said for this answer is that it finds that Drummond submitted the hook to such inspection as he thought was reasonable, but when we take this in connection with the general verdict the jury could have found, and may have found, that this inspection was not a reasonable and proper one.    Again, there is a contention that proper care was not exercised in doing the work, and this allegation is supported by evidence to show that the hook was fastened to the steel cable supporting the load by the tip end of the hook, thus throwing a very much greater strain upon the hook

at the point at which it broke than would have been upon
it had the hook been properly fastened to the cable.    The
jury may very well have found that this was not a reasonably
careful way to do this work..    Drummond did not know
that the hook was attached to the rope in this manner, and,
of course, not knowing it he would have no reason to expect it
to break from that cause.    But aside from the evidence the
answer would mean no more than that the work was being
properly done in his opinion.    It is quite apparent from
what we have said that this interrogatory is entirely too nar-
row to cover either the case made by the pleadings or that
made by the proof introduced in support of them, and that
there is, therefore, no irreconcilable conflict between this
special finding and the general verdict.

Interrogatory No. 3 is, ''At the time of the accident was
the plaintiff in as safe a position as the foreman Drum-
mond?'' to which the jury answered, ''No.''    The    fourth
interrogatory is, ''Did the foreman take the same care to
provide for the safety of the plaintiff as for his own safety?''
to which the jury gave an affirmative answer.    The answers
to these interrogatories conclude nothing.    They are simply
an attempt to substitute the care exercised by Drummond,
the defendant's foreman, in doing this work for the care
required by law.    The test of due care is not what any par-
ticular man may think is due care, but what a reasonably
prudent man believes to be due care under the particular
circumstances, and these interrogatories assume, if they are
to have any force in this case at all, that Drummond is the
reasonably prudent man by whose conduct due care must be
measured in the doing of the work.    The very gist of the
action is that the defendant by its representative Drummond
was negligent, and for the court to assume that whatever
Drummond did was done in the exercise of due care would be
to deny the plaintiff's right to recover.    This measure of
due or ordinary care which is required to be exercised by the
master must be determined in each particular case by the sur-
rounding facts, and is such care as an ordinarily    prudent
man would exercise in the doing of the work under the con-
ditions shown to have existed.    Defendant by these inter-

rogatories attempts to set Drummond up as this ordinarily prudent man.    The ordinarily prudent man by whose conduct due care is to be measured in a particular case must be created by the jury trying the case where there is a question to go to the jury on this issue.    Each member of the jury, of course, considers himself that ordinarily prudent man, and in their deliberations they evolve an artificial, composite personage made up or compounded of their respective ideas of what constitutes an ordinarily prudent person.    Of course, in different cases before different juries this composite person will vary because the composite opinion of any twelve men will not ordinarily be the same as such composite opinion of another twelve.    But experience teaches that this is perhaps the only practicable way to arrive at a standard from which to work.    It has served a beneficent purpose thus far in the administration of the law, and we do not now conceive of any better standard by which to determine what is due care under a particular state of facts.

The fifth and last interrogatory is, ''Were the plaintiff's injuries proximately caused by reason of any incompetency on the part of the man at the nigger-head handling the outhauling rope?'' to which the jury gave a negative answer.    Looking to the pleadings alone, this interrogatory and this answer conclude no issue in the case.    The pleadings show that the defendant employed a number of servants in doing this work, and that it was negligent in the selection of incompetent servants for the purpose, by reason of which negligence the hook broke and produced the injury complained of.    This interrogatory limits the finding of the jury to one particular servant. So far as the pleadings are concerned, the jury may have found that all of the other servants employed by the defendant were incompetent, and that the defendant was negligent in their employment.    The issue made by the evidence, however, is, so far as the employment of incompetent servants is concerned, confined to the particular man referred to in the interrogatory, so that when we interpret this interrogatory in the light of the issue made by the evidence, it does conclude the question it was intended to settle, that is, that the defendant was not negligent in the employment of its

servants; but under the rule which the defendant lays down for our guidance in construing these interrogatories and the answers thereto, this special finding means nothing.    We think, however, that the rule is a little too narrow.    Where general allegations of negligence are made in the pleading, and these are met by a plea of not guilty, in construing the special finding of the jury upon the issue thus made we see no reason why, if the parties have narrowed the issue to a particular and distinct act of negligence, the court may not look to the evidence for the purpose of determining just what the issue was that the jury was called upon to decide.    In reviewing the special interrogatories and the answers thereto, we have interpreted them in the light of the pleadings alone and feel that they are not in conflict with the general verdict, and we have also considered them in the light of the evidence introduced ih support of the issues, with a like result.    The defendant, therefore, was not entitled to have a judgment in its favor upon the special verdict.    Inasmuch as this is the only error now relied upon, the conclusion follows that the judgment complained of will be affirmed.

*Affirmed.*