# CHARLESTON.

RALPH L. PRAGER v. THE CITY OF WHEELING.

Submitted September 26, 1922.    Decided October 3, 1922.

1. ·TRIAL—*Special Findings Must be Irreconcilably Inconsistent . With Verdict to Control it.*

   Special findings must be inconsistent with the verdict in order to control it, and such inconsistency must appear after excluding every reasonable conclusion that would authorize the verdict. (p. 598).

2. MASTER AND SERVANT—*Master Required to Warn Inexperienced Servant.*

   It is the duty of a master to warn his servant of dangers connected with the employment which cannot be readily observed and appreciated by the servant, and especially is this true where the servant is a minor and inexperienced in the work he is directed to perform, and if the servant be injured without having been warned by the master he may recover for the injury. (p. 599.)

3. APPEAL AND ERROR—*Master and Servant—Conflicting Evidence for Jury.*

   Whether the servant has been properly warned of dangers of the employment is a jury question, and its finding will not be disturbed where there is a substantial conflict in the evidence. (p. 600).

4. MASTER AND SERVANT—*Negligence in Not Warning Inexperienced Servant Held for Jury.*

   Where an inexperienced minor servant was employed to oil and wipe three eccentrics (a part of a pump) located on a common plane, near each other and of the same type and general appearance, which moved or revolved with varying swiftness near the edge of platforms, and at unequal distances therefrom, one, the northern, approaching its platform to within about 29 inches, the southern one approaching within about 12 inches, and the middle one approaching within 5¾ inches of its particular platform, and such servant was given general instructions how to do the work accompanied by demonstrations of how it should be performed. cautioned of danger in a general way, and warned to be careful, without specific warning of the danger of being caught

between the platform and eccentrics; and while engrossed in the work his head is caught between the middle eccentric and the edge of the platform, causing serious injury, it is a question for the jury to determine whether he was properly and sufficiently warned; and whether the danger was so plainly apparent that he should have observed and avoided it, is likewise a jury question, especially where the jury viewed the machinery in motion, the platform and its surroundings, and could thus determine if the danger was obvious. (p. 603)..

Error to Circuit Court, Ohio County.

Action by Ralph L. Prager against City of Wheeling. From a judgment for plaintiff, defendant brings error.

*Affirmed.*

*Carl O. Schmidt,* for plaintiff in error.

*John P. Arbenz* and *A. E. Bryant,* for defendant in error.

LIVELY, JUDGE:

The city of Wheeling prosecutes this writ of error from a final judgment of the circuit court entered on the 18th day of February, 1922.

The plaintiff, nineteen years of age and inexperienced in the performance of the duties of his employment, was employed by the city as an oiler at its water works pumping station. He was required to wipe, oil and grease three eccentrics, a part of the pump, and while so engaged his head was caught between one of the eccentrics and the edge of a platform near it, causing him serious injury. The city had not elected to comply with the requirements of the workmen's compensation law. The declaration contained three counts, the first of which charged the city with having failed to provide safe and proper machinery; the second charged the city with not having provided a reasonably safe place for the plaintiff to work; and the third was based upon the alleged failure of the city to properly and sufficiently instruct the plaintiff at the time of the employment of the dangers and risks of the employment. Special interrogatories were propounded to the jury on the trial, and it may be conceded that the answers to these interrogatories would relieve the city from liability under the first two counts.

It is contended by counsel for the city that in view of the total failure of the plaintiff .to prove liability of the city under the third count, the answers to the interrogatories should control the verdict which found in favor of the plaintiff in the sum of $6,333.33. It is well established that special findings must be inconsistent with the verdict in ·order to control it, and such inconsistency must appear after excluding every reasonable conclusion that would authorize the verdict. *Insular Land T. & M. Co.* v. *Franklin Ins. Co.,* 35 W. Va. 666; *National Metal Edge Box Co.* v. *The Hub,* 89 W. Va. 101, 108 S. E. 601; *Troby* v. *Ritter-Conley Co.,* 89 W. Va. 123. As it is clear that the answers to the special interrogatories are not responsive in any manner to the issues involved in the third count, they cannot control the verdict.

The duty which plaintiff was required to discharge, was to wipe the grease off of certain eccentrics which were a part of the machinery used in the operation of the pumps at the pumping station. He was furnished to the city as an experienced and capable oiler and wiper by a labor union which had contracted with the city to furnish it competent and experienced men. He was inexperienced and of immature age. It is difficult to determine from the record the exact relative locations of the eccentrics, and the platform on which the plaintiff stood at the time of the injury, and the one against which his head was crushed by movement of the eccentric. It appears that a photograph was in evidence at the trial; and the jury was taken to the pumping station and observed the machinery and .eccentrics in motion and were given a demonstration of the manner in which the wiping was done. However, it appears that these eccentrics were three in number and were located on one deck or plane, near to each other, and on the side of each of which was a small metal platform. The eccentrics were located at unequal distances from the platforms, the one in the center at which the accident occurred being 5¾ inches from the platform on which the plaintiff stood while performing his duty. At the time of the injury, while the plaintiff was

engrossed in his duties, a bolt on the middle eccentric strap caught the plaintiff under the chin which forced his head against the edge of the platform from which a severe permanent injury resulted. At the time of the accident the plaintiff had been working in the capacity of an oiler and wiper for the city on these eccentrics at intervals extending over three months and had wiped them about twenty-eight times during that period. The case turns upon whether the plaintiff was sufficiently and properly warned of the dangers to which he would be subjected in the performance of his duties, and whether the danger was so plainly obvious that he should have perceived and avoided it. It is well settled in this and other jurisdictions that it is the duty of the master to warn the minor servant of the dangers to which he will be subjected while in the performance of his duties and to fully instruct him how to avoid them; unless they are so simple and obvious that it can be fairly presumed from his age and ordinary capacity that they are fully known to him; and unless the master does so, or it is clear that the danger was so simple and obvious that it should have been seen, appreciated and avoided by the minor, then the master is liable. *Ewing* v. *Lanark Fuel Co.*, 65 W. Va. 726; *Shaw* v. *Hazel-Atlas Co.*, 70 W. Va. 676; *Sprinkle* v. *Coal & Coke Co.*, 72 W. Va. 358; *McCarty* v. *Lumber Co.*, 73 W. Va. 142; 26 Cyc. p. 1173, title "Inexperienced or youthful servants," with citations to decisions from all the states including our case of *Giebell* v. *Collins Co.*, 54 W. Va. 518.

The contentions of the parties are based on whether the evidence was sufficient for the jury to determine if this duty of the city to the defendant was sufficiently discharged. When the plaintiff began his work he was instructed by the witness Cunningham, who appears to be a competent and experienced man, the method of oiling and cleaning the different parts of the pumps and especially how to wipe the eccentrics, and his attention directed, in a general sort of way, to the dangers of the work. He told the plaintiff to be careful in wiping the eccentrics, and if his oil can

got caught in the machinery to let the can go, as another
oil can could be obtained but his fingers could not be replaced.
It appears that he did not bring to the attention of the
plaintiff the variant distances between the eccentrics and
the platforms.  He did not point out to the plaintiff the
distance between the eccentric and platform at which the
accident occurred and did not warn him of the dangers that
he might encounter if he did not synchronize the movements
of his body with those of the eccentrics, which sometimes
were swifter in their movements according to the power on
the pumps.    It also appears that the plaintiff had not noticed
that the distances between the platforms and the eccentrics
were not the same.  This was not pointed out to him until
after the accident had occurred.   Cunningham demonstrated
to the plaintiff the manner in which he should oil and wipe
the eccentrics, but the warning he gave him seemed to be
of a general character and not specially directed to the
danger of having his head caught between the middle eccen-
tric and the edge of the platform.  Carpenter, an experienced
engineer, employed by the city, corroborates Cunningham,
and also testified that he, Carpenter, had repeatedly warned
the plaintiff to be careful of the dangers of the machinery.
Other persons about the plant also cautioned the plaintiff
to be careful and told him that the machinery was neces-
sarily dangerous.   It appeared that the eccentrics were all
alike in design and of the same general appearance, and
the spaces between them and the platform were not readily
observable.   The space between the straps of the eccentrics
and the edge of the platform on one of the eccentrics, which
was described to be north of where the injury occurred,
was about twenty-nine inches, thus giving ample space in
which to safely wipe the eccentric; while the space between
the platform and the eccentric on the south of the one where
the injury occurred was about twelve inches; and the space
between the platform and the middle eccentric, as before
observed, was about five and three-fourths inches.  The
plaintiff had been criticised by some employee (whose turn
at wiping followed) for not having properly wiped the grease

off the eccentric, and at the time he was injured his mind was intent upon properly performing his duty so as to avoid criticism, and having reached in to perform this duty, did not withdraw his head quickly enough to avoid the injury.

There is a substantial conflict in the evidence as to whether the plaintiff was sufficiently and properly warned of the particular danger which caused the injury, a conflict to be determined by the jury. It was the positive duty of the defendant to give the plaintiff such instructions and warning of the dangers, and the failure to do it constituted negligence for which it was liable. This issue was presented to the jury by instruction No. 6 for the plaintiff, which in substance told them that if they believed that the employment was dangerous; that the defendant knew the plaintiff to be inexperienced; and did not give him sufficient instructions as to the danger incident to the performance of his duties, then by reason of such failure of the defendant to properly instruct and warn, they should find for the plaintiff. Defendant's instruction No. E told the jury that if they should find that the plaintiff had been carefully and properly instructed in his work by the defendant and had been warned or knew of the dangers thereof he could not recover under the third count of the declaration.

Can it be said that the danger of being caught between the eccentric and the edge of the platform where the plaintiff was injured was so palpable and apparent to the plaintiff that instructions and warnings were not necessary and that he should have perceived the danger and avoided it? The plaintiff testified that he had not thought of this danger and had not perceived it. He expressed it by saying, "I never thought that far." It must be remembered that the jury was taken to where the accident occurred, and observed the machinery in motion and saw where the plaintiff stood in the performance of his duty, and was given an ocular demonstration of the method in which the grease was wiped from the eccentric, and evidently with this evidence were convinced that the danger was not so plain and apparent that instructions and warnings were unnecessary.

Taking into consideration the nature of the machinery, the age and inexperience of the plaintiff and all the surrounding facts and crcumstances, we think it was a proper case for the jury to determine whether the dangers were so obvious as to excuse proper warning on the part of the city. *Barnet* v. *Railway Co.*, 81 W. Va. 255; *Texas and Pacific R. R. Co.* v. *Swearingen*, 196 U. S. 51. A boy of the age of nineteen years, without experience with machinery is not as likely to perceive danger and be as careful as one of mature years. While this court has held that there is a presumption that a minor servant over the age of fourteen years is capable of appreciating dangers which are reasonably plain, it is generally a question for the jury to determine from the nature of the dangers of the work, the age, capacity, intelligence and experience of the minor servant, together with all the facts and circumstances, whether the minor servant is chargeable with such negligence in not observing and avoiding the danger as will preclude recovery. It is against experience and reason to presume that a boy of fourteen years of age is as capable of perceiving and avoiding danger as a person twenty-one years old or more.

We think the evidence is sufficient to sustain the verdict, and the judgment is affirmed.

*Affirmed.*