66 P.(2d) 967

PETTES v. JONES.

No. 4151.

Supreme Court of New Mexico.

March 29, 1937.

J. Benson Newell, of Las Cruces, for appellant.

Wayne C. Whatley, of Las Cruces, for appellee.

BICKLEY, Justice.

Plaintiff (appellee) sued defendant in the district court of Dona Ana county for damages by reason of personal injuries allegedly sustained in an automobile collision. Trial being before a jury, plaintiff had judgment for $375 on the general verdict in his favor for that amount. Defendant appeals and assigns one error, viz., the refusal of the trial court to render judgment in his favor upon the jury's answer to a special interrogatory submitted at his request which he maintains is in irreconcilable conflict with the general verdict.

The evidence is omitted from the record. We have only the pleadings, instructions, general and special verdicts, motions incident thereto, judgment containing order allowing appeal and præcipe. From so much of the record as is before us, it appears the ground of negligence asserted is the claimed careless act of defendant in propelling his automobile into the rear of plaintiff's car, which was traveling in the same direction, causing the injuries complained of.

The defendant, although admitting that his car struck the rear portion of plaintiff's car, as claimed, denied generally the allegation of negligence made by plaintiff. The collision having occurred in the nighttime, the defendant pleaded contributory negligence on plaintiff's part in this: "That at the time of the accident complained of there was no tail light or rear light exhibiting a red or yellow light plainly visible for a distance of five hundred feet to the rear of said car; and in fact there was no bulb in the tail light on the occasion of said accident."

In so pleading the defendant obviously sought to charge a violation of Comp.St. 1929, § 11-847, requiring the presence of taillights on motor vehicles. The trial court charged the jury that failure to observe a statutory duty or requirement was negligence per se. It defined negligence and contributory negligence and "proximate cause" in the usual form and in a manner satisfactory to the parties. The material substance of the instructions was that if the plaintiff sustained the injuries alleged and established negligence of de-

fendant, and plaintiff was injured as a proximate cause of such negligence, the verdict should be for the plaintiff, unless defendant established that plaintiff was negligent at the same time and that plaintiff's negligence proximately contributed to the collision, and if defendant established these things, the verdict should be for defendant.

At defendant's request certain special interrogatories were submitted, reading:

### "Special Findings.

"We, the Jury, find the special findings submitted, as follows:

"(a) 'Was Pettes' Truck equipped with a tail light at the time of the accident which exhibited a red or yellow light plainly visible for a distance of 500 feet to the rear of said Truck?' We find and answer: (Signed) No.

"(b) 'Did the failure of Pettes' truck to be equipped with a tail light contribute to any extent to cause the collision?' We find the Answer: (Signed) Yes.

"[Signed] Pedro Maese, Foreman."

Upon the return of such verdicts the defendant moved for judgment non obstante veredicto. This motion was formally denied in the judgment in plaintiff's favor on the general verdict. Claimed error in its denial, as we have hereinabove pointed out, presents the sole question for decision.

We must determine whether the special findings are inconsistent with the general verdict. If so, the former shall control the latter. "Trial Court Rules," § 70-103. However, before declaring a conflict, an effort should be made to reconcile apparent inconsistency. In order to prevail, the special finding should clearly exclude every reasonable conclusion that would authorize the general verdict. Moreover, no presumptions will be indulged in favor of answers to special findings as against the general verdict. But "the very purpose of special findings is to test the validity of the general verdict by ascertaining whether or not it may have been the result of a misapplication of the law to actual findings in material conflict with the findings which in their absence would be implied from the general verdict. In other words, the response of the jury to the special issues or particular questions of fact may show that no judgment can properly be entered in favor of a plaintiff upon a general verdict because the jury has not found in his favor upon some material issue, or has found against him as to some fact fatal to his cause of action." Plyler v. Pacific Portland Cement Co., 152 Cal. 125, 92 P. 56, 59.

Bearing in mind these applicable rules of construction, we are forced to the conclusion that there is here shown such inconsistency as will vitiate the general verdict. The plaintiff is found negligent through failure to comply with the statute requiring taillights. But before that negligence, under instructions given, should bar recovery, it must be such as "combined and concurred with the defendant's neg-

ligence, and contributed to the injury as *a proximate cause* thereof, and as an element without which the injury would not have occurred"; in other words, plaintiff's negligence must have proximately contributed to his injury in order to defeat his recovery.

The general verdict inferentially carried the finding of defendant's negligence and that such negligence was a "proximate cause" of plaintiff's injuries. That inference is no stronger than that the special findings that the failure of Pettes to have his truck equipped with a taillight was negligence and that such failure contributed to the collision carried a finding that such negligent failure of the plaintiff to comply with the statute was a "proximate cause" of such injuries. Neither the general nor special verdict employed the phrase "proximate cause."

So we have a case where it will be important to understand the meaning of the phrase "proximate cause" and the methods of ascertaining its existence in a particular case.

It seems so obvious that the special findings are inconsistent with the general verdict that no argument should be necessary. Since all are not in agreement, it seems advisable to invoke support for our conclusion.

First, there is abundant precedent to support it and none against it. The Supreme Court of Kansas in Lathrop v. Miller (1931) 132 Kan. 425, 295 P. 722, 723, dealt with a similar case. The action was brought by Mary Lathrop against Burke Miller to recover damages sustained to her when an automobile driven by defendant was run against her. She recovered damages and the defendant appealed. With the verdict in favor of plaintiff, there were a number of special findings returned by the jury. One of these was as follows:

"8. Do you find that plaintiff by her own negligence contributed to the injury complained of? A. Yes. * * *

"Upon the evidence the jury has expressly found that plaintiff by her own negligence contributed to her injury. So often has it been decided that special findings in conflict with the general verdict control the general verdict, that citations of authority are hardly justified. * * *

"Assuming that there was negligence, on the part of the defendant, and that the ordinary negligence of the plaintiff contributed to her injury, there is no escape from the conclusion that it bars a recovery of damages for the injuries she sustained. Plaintiff contends that, while the jury found contributory negligence on her part, the finding does not necessarily mean that her negligence was the proximate cause of the injury. Even if [it] was not the primary cause, but did contribute in a degree, it must be interpreted as a proximate and not a remote cause. * * * The effect of the finding is that her acts and omissions contributed directly to the injury, and, where the negligence of the injured person is in part a contributing cause, it is to be regarded as a proximate cause."

In the case at bar, in order for the general verdict to stand, we would have to conclude that the negligence of the defendant was the sole proximate cause of the collision. The jury by its special findings has said that such is not the case.

If the jury believed from the evidence that the defendant was driving so negligently and carelessly that the collision would have occurred even if the plaintiff's truck had been properly equipped with taillights, they would have answered the second interrogatory in the negative. They said that the acts of the defendant and the omission of the plaintiff concurred in causing the collision. To say that the omission of plaintiff with respect to taillights contributed to the collision and concurred with defendant's negligence to cause the injury is to repudiate the idea that the collision would have happened if the plaintiff's truck had been equipped with taillights, so we must conclude that the special verdict carried a finding that but for the negligence of the plaintiff, together with the negligence of the defendant, the collision would not have occurred.

In line with the decision of the Supreme Court of Kansas in Lathrop v. Miller, supra, we find a decision of the Commission of Appeals of Texas, Hines v. Foreman, 243 S.W. 479, 483. Foreman sued Hines as Director General of Railroads to recover damages because of a collision between an automobile driven by plaintiff and one of defendant's trains. Among other defenses, the railroad interposed the defense of contributory negligence on the part of plaintiff based on the allegation that plaintiff was driving his car without having a muffler cut-out thereon as required by law. The court said:

"The first question of importance raised by plaintiffs is embodied in the contention that the finding of the jury upon the use of the muffler cut-out is insufficient to defeat plaintiff's right of recovery because there was no finding that such act was a proximate cause or a proximate contributing cause of the accident. The specific finding is that the running of the car without a muffler 'caused or contributed to cause the injury.' * * * We have reached the conclusion, however, that as applied to the facts in the present case this contention cannot be sustained. The province of the jury is to determine the controlling facts upon which there is a controversy in the evidence. If under the facts of a case the violation of a statute might reasonably be a cause of the accident, but not necessarily a proximate cause thereof, then a jury finding to the effect only that it was a cause, in the absence of a finding that it was a proximate cause, would be wanting in an essential element as a finding of contributory negligence. We are unable to conceive, however, of any theory upon which the jury could find that the failure to use the muffler could cause or contribute to the injury in the present case without doing so proximately. The only possible way in which such failure could contribute to any degree

in causing the injury was in preventing the occupants of the car from hearing, and therefore from discovering, the approach of the train in time to avoid the collision. It is plain from plaintiff's testimony that he neither saw nor heard the train until the car was upon the crossing, when it was too late for him to avoid the accident. The conclusion is irresistible that, if plaintiff had discovered the train in time to have stopped his car, he would have done so and the accident would not have happened. Speculation upon this question would be useless. Furthermore, the finding itself eliminates any question which might arise in this regard. If plaintiff would not have stopped his car even if he had heard the train in time to have done so, then his failure to hear it was a wholly immaterial matter and could not have been in any sense a contributing cause to the injury. *It seems clear to us that the finding that the failure to use the muffler caused or contributed to the injury necessarily includes a finding under the peculiar facts of this case that it was a proximate contributing cause,* and being a violation of a positive statute upon the subject, and therefore negligence per se, contributory negligence of the plaintiff would follow as a matter of law from this jury finding." (Italics ours.)

These observations are very cogent and touch our case in several places. The instinct of self-preservation suggests that defendant did not run into plaintiff intentionally and wantonly, and it is not charged that he did so, and we might paraphrase the language of the Texas Court thus: "If defendant would not have stopped his car even if plaintiff had had tail lights on his automobile, then plaintiff's omission to have such lights was a wholly immaterial matter and could not have been in any sense a contributing cause to the collision." And further paraphrasing: "The only possible way in which plaintiff's omission could contribute in any degree to the collision was in preventing defendant from discovering the presence of plaintiff's car as soon as it might have been discovered if it had been equipped with lights." Drawing upon the most elemental of human experiences pertaining to motor vehicle travel at night, the relationship between darkness and danger, and the relationship between light signals and safety which is so readily apparent to us, must be assumed to have been within the understanding of the jurors as reasonable men and so the special finding must be interpreted in the light of such universal knowledge.

In Foster v. Beckman, 85 S.W.(2d) 789 (the facts being different from those in the case at bar) the Texas Court of Civil Appeals distinguished Hines v. Foreman, but they did not, as they could not, overrule that decision.

In Behymer v. Mosher Mfg. Co. (Tex. Civ.App.) 192 S.W. 1148, the court decided: "An affirmative answer by the jury to a special issue submitted, whether plaintiff's contributory negligence 'caused or contributed to cause' injury, bars plaintiff's recovery, although such special issue did not use the word 'proximately'; proxi-

mateness of the cause being necessarily implied."

The court quotes from an earlier decision (Ratteree v. Galveston, H. & S. A. R. Co., 36 Tex.Civ.App. 197, 81 S.W. 566) the following: "We cannot conceive of negligence that 'caused or contributed' to an injury not being such negligence as must have 'proximately contributed' to the injury." See, also, Anderson v. Southern Kansas Stage Lines Co., 141 Kan. 796, 44 P.(2d) 234; Riley v. Guthrie, 218 Iowa, 422, 255 N.W. 502; Wall v. Cotton et al., 22 Ala.App. 343, 115 So. 690. And see Russell v. Davis, 38 N.M. 533, 37 P.(2d) 536, as to standards of conduct and reciprocal duties of those who travel the highways.

In Bullard v. Ross (1933) 205 N.C. 495, 171 S.E. 789, and Crane v. Carswell (1932) 203 N.C. 555, 166 S.E. 746, the court, dealing with situations almost identical with the case at bar, decided as we do. See, also, Baker v. Wilmington & W. R. Co., 118 N.C. 1015, 24 S.E. 415, a leading case cited in the foregoing North Carolina decisions where the court goes more into detail in stating the reasons for the conclusion, and is of great importance in our considerations because it explains why some courts have expressed opinions which seem at variance with those we here express, the reason in many instances arising from their system of permitting application of the last clear chance doctrine without being pleaded in plaintiff's complaint. Some of the expressions in the opinion are: "Where nothing more appears from the verdict of the jury, or by way of admissions in the pleadings, or in the record or statement of the case on appeal, than that the injury of a complainant was caused by the negligence of the defendant, the plaintiff may of right demand judgment for the damages ascertained by the jury, and for costs. Where it is found, in addition, that the plaintiff's own carelessness contributed to bring about the injury, the court, in the absence of any further finding, must assume that the contributory negligence was a concurrent cause, and give judgment for the defendant."

We venture some further support to our conclusion and the decisions cited drawing upon the principles involved in the method of proving proximate cause.

In our consideration, we eliminate as valueless decisions from jurisdictions where the comparative negligence doctrine prevails, it being inapplicable here; and those jurisdictions where violation of a safety statute is only prima facie evidence of negligence. In New Mexico violation of a safety statute *is* negligence; and also decisions of the courts of those states where the "last clear chance" doctrine is available to plaintiff without being pleaded in his complaint, and must also eliminate decisions from jurisdictions where degrees of negligence are recognized. In Thayer v. Denver & R. G. R. R. Co., 21 N.M. 330, 154 P. 691, it was decided that in this state there is no warrant for classification of negligence into de-

grees, viz., slight, ordinary, and gross, and also that the doctrine of "last clear chance" if relied upon by plaintiff must be pleaded in his complaint.

Prof. Leon Green, author of the work on "Rationale of Proximate Cause," in an article appearing in Vol. 1, Texas Law Review, pp. 243, 423, entitled "Are Negligence and 'Proximate' Cause Determinable by the Same Test?" makes the following statement:

"Our courts and text writers have repeatedly declared in negligence cases, *no fixed standard of conduct having been prescribed,* that the conduct of an ordinarily prudent person under the given circumstances is the standard by which negligence of a particular defendant is to be determined. And that what an ordinarily prudent person would have done under given circumstances is determined by what he should have foreseen as the probable consequence of his conduct. In other words, if an ordinarily prudent person under the given circumstances would have foreseen as a probable consequence of his conduct, hurt to the plaintiff, or some one similarly situated, then defendant owed the duty to exercise care, and failing to do so, is guilty of negligence. (Italics ours.)

"With equal consistency the courts have declared in negligence cases that a defendant is only liable in damages for those consequences that he, as an ordinarily prudent person, should have reasonably foreseen as a probable result of his conduct, and that if given consequences or consequences similar in character, could not have reasonably been foreseen, such are not 'proximate' consequences and cannot be recovered for. In other words the 'probability,' 'foreseeability' or 'anticipation' test is seemingly used both in determining the *existence* of negligence, and in determining *for what consequences* of such negligence a recovery may be had. It might be more accurate to say that our courts have apparently treated the *existence* of negligence and *causal relation* as the same problem, to be solved by the same formula."

We think this is a correct statement of the prevailing rule. See Gilbert v. New Mexico Construction Co., 39 N.M. 216, 44 P.(2d) 489, as to foreseeability as a test of proximate cause.

"Negligence is the proximate cause of an injury when it appears that the injury was the natural and probable consequence (result) of the negligence or wrongful act, and it ought to be foreseen." See Decennial Digests, Negligence, ☞56(1) et seq.

In Melkusch v. Victor American Fuel Co., 21 N.M. 396, 155 P. 727, 729, we said: "It is well settled that one whose injuries are the proximate result of his violation of a statute is, as a matter of law, guilty of contributory negligence which precludes a recovery for the negligence of another which contributed to the injury."

In Union Stockyards v. Peeler (Tex. Com.App.) 37 S.W.(2d) 126, 128, "proximate result" was thus defined: "Finding that injury was 'proximate result' of act

of negligence requires showing that injury was natural and probable consequence and should have been foreseen."

In Kelsey v. Rebuzzini, 87 Conn. 556, 89 A. 170, 52 L.R.A.(N.S.) 103, the court said: " 'Cause' and 'consequence' are correlative terms, one implying the other, and when an event is followed in natural sequence by a result it is adapted to produce, or aid in producing, that result is a consequence of the event, and the event is the cause of the result."

We quote from Moore v. Lanier, 52 Fla. 353, 42 So. 462, 465, as follows: "Proximate cause is that which naturally leads to or produces, or contributes directly to producing, a result such as might be expected by any reasonable and prudent man as likely to * * * follow and flow out of the performance or nonperformance of any act."

"When there is danger of a particular injury which actually occurs, we must surely say that it is the usual, ordinary, natural, and probable result of the act exposing the person or thing injured to the danger." 22 R.C.L., Proximate Cause, § 12.

"The meaning of proximate cause in this connection (causal relation) has been explained as follows: If the injury complained of is a natural and probable consequence of a violation of the statute, then that violation is correctly taken as the proximate cause of the injury. If the very injury has happened which was intended to be prevented by the statute law, that injury must be considered as directly caused by the non-observance of the law." 20 R.C.L., Negligence, § 37.

Prof. Green's objection to the application of the probable consequence rule as a test of accountability is to those decisions which attempt to *limit* a plaintiff's recovery to "probable" consequences. He says:

"The affirmative aspect of the rule, viz., that a defendant is responsible for the foreseeable consequences of his wrong is admittedly correct. The negative aspect, viz., that a defendant is not responsible for the unforeseeable consequences of his wrong is thought to be unsound and is the part of the rule which is thought to justify discussion."

He quotes Shearman and Redfield, Negligence (6th Ed.) Vol. 1, par. 29a, as follows: "The affirmative of the rule of foreseen consequences is doubted by none, that is, that every one guilty of the violation of legal duty to another is liable for all the consequences of such violation of duty as could have been foreseen by a person of ordinary prudence in the defendant's position at the time as probable."

Let it be remembered that we have heretofore been referring to the method of ascertaining the existence of negligence and proximate cause *when no fixed standard of conduct has been prescribed.*

The violation of a statutory standard of conduct is negligence per se. By this expression is not meant that a new kind of negligence has been created. It is a process by which the existence of negligence is to be ascertained. This thought is elaborated

in Platt v. Southern Photo Material Co., 4 Ga.App. 159, 60 S.E. 1068, 1070: "Every violation of any of those duties of omission or commission, which, arising from man's state as a social being, have received recognition by the law of the land, either generally or specifically, is an act of negligence. So long as these duties remain undefined or defined only in abstract general terms a breach is not properly denominated negligence per se; but when any specific act or dereliction is so universally wrongful as to attract the attention of the lawmaking power, and this concrete wrong is expressly prohibited by law or ordinance a violation of this law, a commission of the specific act forbidden is for civil purposes correctly called negligence per se. In those jurisdictions in which the application of the facts to the law rests with the jury, the court cannot primarily declare that any particular concrete act or state of circumstances amounts to a breach of duty unless the law so expressly declares. This finding is left to the jury; but, if the law itself puts its finger on a particular thing, and says, 'This is wrong,' the court may also (for there is no question as to a fact which the law says exists) put its finger on that same thing and say, 'This is negligence—negligence per se.' This artificial distinction between negligence per se and negligence not per se respects, therefore, merely the method by which the existence of negligence is to be ascertained in particular instances."

Not every violation of a legislative enactment will create civil liability. The rules for determining civil liability from the violation of a statute are thus set forth in Restatement of the Law, Torts, Negligence:

"§ 286. The violation of a legislative enactment by doing a prohibited act, or by failing to do a required act, makes the actor liable for an invasion of an interest of another if:

"(a) the intent of the enactment is exclusively or in part to protect an interest of the other as an individual; and

"(b) the interest invaded is one which the enactment is intended to protect; and,

"(c) where the enactment is intended to protect an interest from a particular hazard, the invasion of the interests results from that hazard; and,

"(d) the violation is a legal cause of the invasion, and the other has not so conducted himself as to disable himself from maintaining an action."

It will frequently be a question of mixed law and fact whether the violation of a statute creates civil liability in a particular case.

"Two factors enter into the question of law and fact; first, whether the particular act has been performed or omitted; second, whether the performance or omission of such act was a legal duty, the first of which is a question of fact, the second, a question of law." Thompson on Negligence, § 7408.

The instructions of the court will necessarily be adapted to the facts in testimony. Properly the trial court considered the only question of fact relative to plaintiff's negligence in the case at bar for the jury's deter-

mination was whether he had violated statutes properly to be invoked as material in the case. This was the trial court's view, unobjected to.

How was the court to determine whether it was proper to submit the instruction that if either party had violated a statutory standard of conduct that he was guilty of negligence as a matter of law? Manifestly the judge must consider the statute and the facts in testimony and determine whether (a) the enactment is exclusively or in part to protect an interest of the parties in the case on trial, and (b) whether the interest claimed by the parties, or either of them, was one which the enactment is intended to protect.

How is the judge going to determine these factors except by drawing upon his knowledge of human experience and by the process of applying the test of whether the event which has happened is of the kind designed by the statute to be prevented and is the probable consequence of a violation of the statute? But it was properly submitted to the jury whether, if the jury found that the plaintiff violated a statute, such negligence caused or contributed to cause the collision. It being found by the jury that the violation of the statute did contribute to cause the collision, and the court having already determined that the statute was designed to prevent just that sort of collision, then using the same process the court was circumstanced to find that the quality of proximateness attached to the cause. The jury, having found that the violation of the statute contributed to cause the collision, would not be permitted to say that the quality of proximateness did not characterize the "cause" where the dereliction has been considered so universally wrongful as to attract the attention of the Legislature to the end that it has been enacted that such dereliction is a criminal act, and the court is able to see by applying the statute to the wrongful act that a civil liability has been created. In other words, the court, having found that if the plaintiff violated the statute, he was under the facts guilty of negligence as a matter of law, was by the same token able to say that the quality of proximateness attached to the cause.

Upon the record before us, it was the plain duty of the trial court to sustain defendant's motion for judgment notwithstanding the verdict.

The failure of the minority to duly appreciate that the determination of "proximateness" as a characterization of "cause" requires the determination of the quality of conduct involved is we believe the reason for their inability to agree with us. Proximateness is qualitative and not quantitative.

The question is asked: "Is there, then, one rule for the plaintiff and another for the defendant in this character of case?" We go no further than to say that in the sanctuary of the law a violator of the law seeking relief from the consequences of his own act does not stand in high favor. The reason for this policy of the law has been variously stated as that the plaintiff is a joint tort-feasor seeking to recover indemnity for his own wrong, and that the plain-

tiff falls under the maxim "volenti non fit injuria," and that he who comes into court must come with clean hands, and still another statement is that plaintiff has assumed the risk of his own wrongdoing. Mr. Street in his "Foundations of Legal Liability," Vol. 1, page 163, says: "The idea involved in the maxim (volenti non fit injuria) is evidently a part of the same scheme of legal ideas as contributory negligence, and occupies an analogous place."

The plaintiff is told that if he goes on the highways in the nighttime with his motor vehicle without taillights he will not only violate the penal code, but he will run the risk of collisions from overtaking cars. Notwithstanding this caution, he says: "I will drive on the highway at night without tail lights, and I will risk the consequences." If a collision occurs to which his dereliction contributed, and he is injured, and comes into court seeking indemnity, he ought to be held to the duty of showing that his dereliction had nothing to do with the injury.

From these considerations arises the principle that if plaintiff's negligence proximately contributes to his injury, the extent or degree of the contribution is immaterial. The reason for this rule is that there can be no apportionment of the damages, and not that the negligence of the plaintiff justifies or excuses the negligence of the defendant. It merely allows the defendant to escape judgment because, from the nature of the case, it is unable to ascertain what share of the damage is due to his negligence. We think this is the reason which prompted the Circuit Court of Appeals of the Eighth Circuit, in Atchison, T. & S. F. R. Co. v. Merchants' Live Stock Co., 293 F. 987, 990, to say: "It is, however, the general rule of law that one whose negligence directly contributes to his injury cannot recover damages of another whose negligence substantially contributes to cause it, even though the carelessness of the latter was the more proximate or the more effective cause of it."

Among the cases cited in support of the foregoing is Spence v. El Paso & S. W. Co., 28 N.M. 132, 207 P. 579, 580.

In our neighboring state of Oklahoma, the Supreme Court in Hailey-Ola Coal Co. v. Morgan, 39 Okl. 71, 74, 134 P. 29, 30, said: "The law will not weigh or apportion the concurring negligence of a plaintiff and defendant. There can be no recovery by a plaintiff who has been guilty of contributory negligence. [Citing cases.] Hence follows, logically, the idea that in case of an injury proximately caused by want of ordinary care on both sides, however slight such want of care may be on the part of the injured party, in the law it is damnum absque injuria. In other words, the doctrine of comparative negligence has no place in our system."

One other question requires consideration. It is suggested that since the evidence is not in the record, then, for all we know, the collision may have occurred under some of the conditions heretofore mentioned where the presence of taillights on plaintiff's car would have been of no benefit to defendant in enabling him to avoid

the collision. Aside from the answer Judge McClendon made to such a query in Hines v. Foreman, supra, that the finding itself eliminates such a question, we find another answer. In Martin v. Herzog, 228 N.Y. 164, 126 N.E. 814, 815, it appears that plaintiff was driving in a buggy at night without lights. The defendant was charged with negligence and plaintiff was charged with negligence in traveling at night without lights. The defendant requested a ruling that the absence of a light on plaintiff's vehicle was "prima facie evidence of contributory negligence." This instruction was refused. The plaintiff then requested a charge that "the fact that the plaintiff's intestate was driving without a light is not negligence in itself," and to this the court acceded. Judge Cardozo, writing the opinion for the court, said: "We think the unexcused omission of the statutory signals is more than some evidence of negligence. *It is negligence in itself*. Lights are intended for the guidance and protection of other travelers on the highway. Highway Law, § 329a. By the very terms of the hypothesis, to omit, willfully or heedlessly, the safeguards prescribed by law for the benefit of another that he may be preserved in life or limb, is to fall short of the standard of diligence to which those who live in organized society are under a duty to conform."

Judge Cardozo, after discussing the difference between what is negligence in itself and what is merely evidence of negligence, went on to say:

"We think, however, that evidence of a collision occurring more than an hour after sundown between a car and an unseen buggy, proceeding without lights, is evidence from which a causal connection may be inferred between the collision and the lack of signals. [Citing cases.] If nothing else is shown to break the connection, we have a case, prima facie sufficient, of negligence contributing to the result. There may, indeed, be times when the lights on a highway are so many and so bright that lights on a wagon are superfluous. If that is so, it is for the offender to go forward with the evidence, and prove the illumination as a kind of substituted performance. The plaintiff asserts that she did so here. She says that the scene of the accident was illumined by moonlight, by an electric lamp, and by the lights of the approaching car. Her position is that, if the defendant did not see the buggy thus illumined, a jury might reasonably infer that he would not have seen it anyhow. We may doubt whether there is any evidence of illumination sufficient to sustain the jury in drawing such an inference; but the decision of the case does not make it necessary to resolve the doubt, and so we leave it open. It is certain that they were not required to find that lights on the wagon were superfluous. They might reasonably have found the contrary. They ought, therefore, to have been informed what effect they were free to give, in that event, to the violation of the statute. They should have been told, not only that the omission of the lights was negligence, but that it was 'prima facie evidence of con-

tributory negligence'; i. e., that it was sufficient in itself unless its probative force was overcome (Thomas, J., in court below) to sustain a verdict that the decedent was at fault."

During our research in this case we have been impressed by the large number of statements of the courts to the effect that the violation of a safety statute is contributory negligence, and by others that it is equivalent to contributory negligence.

"The weight of authority holds that a plaintiff's breach of a criminal statute is equivalent to contributory negligence." 27 Harvard Law Review 93. .

And see Padilla v. Atchison, etc., Railway Co., 16 N.M. 576, 120 P. 724, stating: "Failure on the part of deceased so to exercise due care *amounts to contributory negligence."*

And see Melkusch v. Victor American Fuel Co., 21 N.M. 396, 155 P. 727, 729, where it was said: "It is well settled that one whose injuries are the proximate result of his violation of a statute is, as a matter of law, guilty of contributory negligence which precludes a recovery for the negligence of another which contributed to the injury."

We think that when the courts used that form of expression they meant more than that the violation of such a statute was negligence, and when they say that the violation of such a statute by the plaintiff was contributory negligence, there is embraced a presumption of causation with an abso-

lute finding of negligence. It seems to us that Judge Cardozo thus appreciates the situation when he said: "To say that conduct is negligence is not to say that it is always contributory negligence."

This is eminent authority for the suggestion that the phrase "contributory negligence" embraces more than the word "negligence." We think the explanation is to be found in Judge Cardozo's argument in Martin v. Herzog, supra, as follows: "We think, however, that evidence of a collision occurring more than an hour after sundown between a car and an unseen buggy, proceeding without lights, is evidence from which a causal connection may be inferred between the collision and the lack of signals."

That is, as we have heretofore said in the case of the violation of such a safety statute as we here have under consideration, the "probable consequence" rule does the double duty of stamping the violation eventuating into a result sought by the statute to be avoided as negligence and also establishing prima facie causal relation between the collision and the neglect of duty by the plaintiff.

In Encyclopedia of Evidence, Vol. 2, p. 947, "Cause," it is said: "Where a cause is shown which might produce an accident and an accident does happen, the presumption is that the accident was due to such cause." See, also, Corcoran v. Traction Co., 15 N.M. 9, 13, 103 P. 645; Puget Sound Traction, Light & Power Co. v. Hunt, 223 F. 952 (C.C.A.)

In Vol. 8, Standard Encyclopedia of Evidence, "Negligence," discussing presumptions, stating that there are none from mere fact of injury, it is stated at page 870: "Where, however, an act or omission of the defendant that is negligent in itself as matter of law constitutes a part of the res gestae, it will be presumed that it was also a proximate cause thereof."

It is suggested that though Justice Cardozo stated a just rule in Martin v. Herzog, that it is not applicable here because it is the law in this jurisdiction that contributory negligence being an affirmative defense, the burden of proving it rests on the defendant. Padilla v. Atchison, etc., Railway Co., 16 N.M. 576, 120 P. 724. (This may be true and yet not applicable or decisive in the case at bar), whereas the statement of Justice Cardozo is in harmony with the practice said by some to prevail in New York, which casts upon the plaintiff the burden of establishing his freedom from negligence. In the first place, Mr. Blashfield, in § 6130, Vol. 9, of Cyclopedia of Automobile Law and Practice, Permanent Edition, does not so understand it, and, after referring to the rule that the person seeking to recover on account of the negligent acts of another has the burden of proof to establish negligence and also causal relation of negligence to injury, takes up the question of "shifting of burden as to proximate cause" and says:

"If an automobile collision should occur on the highway, plaintiff could make out his case after proving the fact of collision, followed by injury, by showing that the speed was above the rate permitted by statute, and the burden would then be upon defendant to prove that the excessive speed was not the cause of the injury; and similarly, where the burden rests upon the defendant to show that negligence of the injured person in the premises was a proximate cause of the injury, the burden may shift.

"Thus, where one riding in a buggy operated without lights was injured in a collision with an automobile under circumstances warranting the inference that the lack of lights was the proximate cause of the collision, the burden was on plaintiff to show that the other lights on the highway, or other circumstances, were sufficient to rebut the presumption." Citing Martin v. Herzog, 228 N.Y. 164, 126 N.E. 814.

If the practice in New York casts upon the plaintiff the burden of establishing his freedom from negligence, there would seem to be no occasion to say that the burden shifts to the plaintiff from the defendant.

However that may be, discrimination must be exercised in using the terms "burden of proof" and "weight of evidence." While burden of proof remains on the party affirming a fact in support of his case, and is not changed in any aspect of the case, except by legal presumption, the weight of evidence shifts from side to side in the progress of the trial, according to the nature and strength of the evidence offered in support or denial of the main fact to be established. During the progress of a trial it often appears that a party gives evi-

dence tending to establish his allegation, sufficient, it may be, to establish it prima facie, and it is sometimes said that the burden is then shifted. All that is meant by this is, that there is a necessity for evidence to answer the prima facie case, or it will prevail; but the burden of maintaining the affirmative of the issue involved in the action is upon the party alleging the fact which constitutes the issue, and this burden remains throughout the trial. See Jones on Evidence (2d Ed.) § 483.

In the sense that the burden rests upon the defendant of ultimately producing conviction, the statement in Padilla v. Atchison, etc., Railway Co., supra, is satisfactory. But where defendant introduces evidence sufficient to make out a prima facie case of contributory negligence by reason of the violation of a safety statute and it is plain to be seen that the injury or consequence was of the kind anticipated by the Legislature from a violation of the statute, it would seem practical and appropriate to require of the wrongdoer that he show excuse or justification for his conduct if that be material, and also that his unlawful act in no way contributed to his injury.

The general rule announced in Padilla v. Atchison, etc., Railway Co., supra, that the burden of showing contributory negligence is on defendant is based upon presumptions. The argument runs thus: It is the duty of a traveler upon a public road approaching a railway crossing to exercise care for his own safety; failure on the part of an injured person so to exercise due care amounts to contributory negligence on his part and will bar a recovery; in the absence of evidence to the contrary, there is a presumption that the injured person stopped, looked, and listened; this presumption is founded on the law of nature, that is the instinct of self-preservation; in the absence of any evidence as to what the injured person did just prior to the accident, it is not to be presumed that he did not stop, look, and listen; therefore the burden of showing that the injured plaintiff did not exercise the care the law requires of him is on the defendant. See 45 C.J., Negligence, §§ 740 and 741.

When the defendant has discharged this burden, what then? In Padilla v. Atchison, etc., Railway Co., supra, the court did not have under consideration the situation existing in the case at bar. It is doubtless proper at the commencement of a trial to clothe the plaintiff with the presumption of exercise of due care arising from the presumptions of right acting and that every person performs his duty and the instinct of self-preservation and the desire of men to avoid danger. The burden was on defendant to produce evidence to overcome this presumption. That much was required of the defendant in Martin v. Herzog, supra. As heretofore pointed out, we think upon reason and common sense and precedent that the inference which arises from the violation of the safety statute at the very moment of the plaintiff's injury requires, as Justice Cardozo said in Martin v. Herzog, "the offender to go forward with the evidence," and prove that his offense had no

bearing upon the collision. In other words, the presumption that the plaintiff was in the exercise of due care having been overcome, the vitality of the rule has been spent, and does not carry over to other phases of the case where the reason for the rule does not exist. While the reasons for the rule that there is a presumption that a plaintiff has been in the exercise of due care are forceful, there is no presumption that his proven negligence eventuating into a result consistent therewith did not proximately contribute to the result. Considerations of common sense, logic, convenience, and precedent are to the contrary and strongly support the view that the negligence and a consistent result being shown, the presumption is that the result was proximate.

In the case at bar, however viewed, the defendant discharged the burden of establishing that the plaintiff was guilty of contributory negligence. The court charged the jury that the violation of the saftey statute requiring a person operating an automobile on the highway in the nighttime to have the same equipped with proper taillights was guilty of negligence as a matter of law. The jury answering interrogatory (a) in the affirmative found the plaintiff to be guilty of contributory negligence. It further found the causal relation between the negligence and the collision. If the plaintiff brought forward any evidence to show that there were other lights on the highway or other circumstances which would render the absence of taillights immaterial, the jury evidently did not think such evidence produced conviction because they found that the absence of the taillight contributed to cause the injury. If there was any such evidence of an excusatory nature, appellee has failed to bring it into the record.

In Blashfield's Cyclopedia of Automobile Law and Practice (Permanent Ed.) § 6130, it is said: "The burden of producing evidence to show the causal relation between the negligence charged and the injury may shift during the trial. Proof of the violation of a law or ordinance, giving rise to the presumption that such violation proximately caused the injury, causes the burden to shift to the other party to overcome such presumption." Citing Moore v. Hart, 171 Ky. 725, 188 S.W. 861.

Blashfield at § 6127 says: "While the plaintiff's negligence may consist in the violation of a rule of the road embodied in a statute or ordinance, he may avoid the defense of contributory negligence by showing that his disobedience in no way contributed to his injury." Citing Benson v. Anderson, 129 Wash. 19, 223 P. 1063, 1065.

The Oregon Supreme Court in Landis v. Wick, 57 P.(2d) 759, indicate that it has been the uniform practice in Washington to place the burden on the defendant of proving contributory negligence of the plaintiff if it is relied upon by defendant. Notwithstanding this, the Washington court in Benson v. Anderson, supra, a case in which the plaintiff was shown to be violating a statutory rule of the road at the time of the injury, held that the plaintiff could not

therefore "recover for the injury he suffered while so violating the statute in the absence of proof showing that his act did not contribute to his injury."

The court said:

"The Legislature has enacted certain 'rules of the road' for the government of the conduct of persons using the highways of the state, and has declared that it shall be the duty of every person to observe them. * * *

"In Johnson v. Heitman, 88 Wash. 595, 153 P. 331, we said that this court 'is definitely committed to the rule that "a thing which is done in violation of positive law is in itself negligence," in the absence of pleading and proof of such peculiar facts as would tend to justify the violation.' * * *

"The statutory enactments regulating traffic upon the public highways are made to be obeyed. They are the outgrowth of necessity. On the observance of them depends the safety of the users of such highways. Failure to obey them not only endangers the safety of the person guilty of the disobedience, but it endangers the safety of others using them in a lawful manner. Courts, therefore, should not look lightly upon infractions of these regulations. One injured while in the act of disobedience of them should be compelled to show with clearness that his act in no way contributed to his injury." See, also, Schick v. Jenevein, 145 La. 333, 82 So. 360.

We are distinctly in sympathy with the thought expressed in Wall v. Cotton et al., supra. Defendant was guilty of negligence in failing to have his car equipped with lights while operating same in the nighttime. On the other hand, the court said it was clear that plaintiff was himself guilty of negligence for a violation of the same statute violated by defendant, and that this negligence and violation proximately contributed to the injury to his property. The court further said: "The lawful traveler has a right to assume that the entire width of the roadway is free from unlawful obstruction. So, while it is clear that defendant's truck was being operated unlawfully and struck plaintiff's car and as a proximate result injured it, it is equally clear that the injury would not have occurred if plaintiff had not been guilty of a violation of a similar statute which contributed proximately to the injury. Both parties were guilty of negligence and of a misdemeanor under the statute. Code 1923, § 3333. As a proximate result both parties were injured by having their cars smashed. They stand before the court 'in pari delicti.' Here the law finds them, and here the law leaves them."

The jury having found a causal relation between the negligent act of plaintiff and the collision, and it appearing that the collision is a natural and probable result of the negligent act, and it conclusively appearing that the plaintiff ought to have foreseen consequences of that kind, then, as a matter of course, the cause was proximate. See Thurman v. Chandler, 125 Tex. 34, 81 S.W.(2d) 489.

In view of all of the foregoing, it is our conclusion that the judgment must be reversed and the cause remanded with direction to enter judgment for the defendant.

And it is so ordered.

HUDSPETH, C. J., concurs.

ZINN, Justice (specially concurring).

The law as enunciated by Mr Justice SADLER is sound law, but he fails to apply it properly to the facts in the instant case.

Ordinarily, if the negligence of the plaintiff contributed "in any degree" or "to any extent," such negligence, when so found by a jury, would be an insufficient finding of contributory negligence to bar recovery for the negligence of the defendant. Ordinarily, such a specific finding could be reconciled with the general verdict. A finding by the jury that the negligence of the plaintiff contributed "in any degree" or "to any extent," in this jurisdiction, does not mean that the negligence of the plaintiff was the efficient or proximate cause of the injury of which he complains.

However, I base my concurrence in the result arrived at by Mr. Justice BICKLEY in this case on the law of negligence as held by our own court. We enunciated the rule in Thayer v. Denver & R. G. R. Co., 21 N.M. 330, 154 P. 691. If the negligence of the plaintiff, which continues concurrently with the negligence of the defendant, contributed proximately to the injury of which the plaintiff complains, he, the plaintiff, cannot recover. In the case of Mayfield v. Crowdus, 38 N.M. 471, 35 P. (2d) 291, we held that *any* negligence of the plaintiff which contributed proximately and directly to cause the injury of which the plaintiff complains will bar recovery.

Here the jury brought in a verdict that the absence of the plaintiff's taillight contributed to the injury of which the plaintiff complains. The absence of a taillight which contributes to a rear-end collision is not a remote or probable cause, but is a proximate cause of the injury complained of. In other words, either the presence or absence of the taillight can either make no difference whatsoever in contributing to the injury complained of by the plaintiff, or it was the proximate cause. There can be no remote or probable cause as applied to the facts here. If its absence contributed to the injury at all or to "any extent" as found by the jury, then it contributed proximately and not remotely or probably.

For example: The absence or presence of a taillight on the car of the plaintiff could make no difference to a drunken or grossly negligent defendant. Its absence or presence in a case of that kind could not contribute in the slightest degree to the negligence of the defendant.

On the other hand, the driver of an automobile at dusk, without a taillight, invites rear-end collisions. The absence of a taillight, under such circumstances, when the jury says that it contributed in some degree to the injury complained of by the plaintiff, must be deemed the proximate cause or not at all.

In this jurisdiction the negligence of the plaintiff must enter into and form a part of the efficient cause of the injury before it will bar an action. Either this court must shut its eyes and say we do not know that which the average human being knows, or else take judicial notice of the fact that the absence of a taillight on an automobile driving at dusk is tantamount to a "keg of dynamite" on the highway, not only dangerous to the owner and occupant, but to every motorist on the highway, and is an invitation to collision and disaster. The absence of such taillight may not be the direct and only cause of the injury, but if its absence enters into and forms a part of the efficient cause of the injury complained of, it is a bar to recovery. To my mind the specific and general verdicts are irreconcilable.

By way of analogy, the pulling of the trigger on a loaded gun may be found by a jury to contribute in some degree to the death of a person struck by the bullet. The jury might say that the leaden ball entering the vital organ is the direct and positive cause of the death. Ought we to shut our eyes and say that the pulling of the trigger (though found by the jury to have contributed in some extent only) does not enter into and form a part of the whole efficient cause of the death.

The minds of reasonable men cannot differ in holding that the plaintiff, a driver of an automobile in the dusk of evening, on a much traveled highway, driving without a taillight, is guilty of conduct which falls below the standard to which he should conform, not only for his own protection, but which conduct is a legally contributing cause, co-operating with the negligence of the defendant, in bringing about the injury of which the plaintiff complains. The absence of a taillight under such circumstances is a substantial factor in bringing upon him the calamity for which he seeks money damages. If it is a factor in "any" degree, it is nothing else but a substantial factor, a proximate cause, and not a remote or probable cause.

To my mind this is sound law irrespective of any statutory ban against driving without a taillight, which statutory prohibition makes driving of a car without a taillight negligence per se. To my mind when a jury brings in a verdict that the absence of the taillight contributed in "any extent" to the injury complained of, such "any extent" means proximate cause. I cannot conceive of a case where the absence of a taillight which contributes to the injury complained of does not enter into and form a part of the efficient cause of the injury.

In the instant case, inasmuch as to my mind the special and general verdicts are irreconcilable, I concur in the result of the opinion of Mr. Justice BICKLEY.

SADLER, Justice (dissenting).

While it is not easy to determine the exact theory of the majority opinion, written by Mr. Justice BICKLEY, it fairly appears that it is predicated upon one or the other of two views, either of

which is untenable if long established governing principles are to be preserved. One view relates to the construction of general and special verdicts; the other has to do with proximate causation in the law of negligence.

The question of causation as presented in this case in reality involves the settlement of a single issue; namely, whether negligence is actionable if it contributes "to any extent" or "in any degree" to cause an injury. It is only in its implications that the prevailing opinion takes the affirmative of this proposition generally. But its whole weight is cast in support of such a proposition in its application to the facts of this case. For of what avail is it to concede that proximate causation must exist to render given negligence actionable; that its contribution merely to some extent, or in a slight degree, will not suffice; if in the same breath it is declared it cannot contribute to any extent without having contributed proximately.

In what thus far has been said I have spoken generally of the law of negligence without differentiating between "negligence" and "contributory negligence." I think the majority agree that there is no substantial difference between them as respects the application to either of controlling principles. A relationship of proximate cause, shown by the evidence, between the negligent act and the injury always has been held absolutely essential to recovery. If contributory negligence be not involved, a defendant's negligence must be established as *the* proximate cause

to warrant a recovery. If involved, it must appear as *a* proximate cause concurring with that of defendant to produce the injury complained of before operating to bar recovery. So that as respects causal relationship between the act and the injury there is no essential difference.

In Anderson on "An Automobile Accident Suit," § 745, pp. 896, 897, the author states: "The great weight of authority holds that before contributory negligence will operate to bar a recovery it must have been an efficient or a proximate cause of the injury; and whatever language is used with respect to contributory negligence it will be seen, when it is analyzed, that in order for contributory negligence to operate as an efficient bar to the plaintiff's recovery it must have been a proximate cause of his injury."

And on page 898 of the same text, the author says: "Some courts, by reason of a mis-use of language, have stated the law to be that there can be no recovery if the negligence of the plaintiff contributed in the least degree to the accident. But it does not take an extended analysis or examination to reach the conclusion that such statement is unsound, since negligence and contributory negligence are not essentially different."

In Foster v. Beckman (Tex.Civ.App.) 85 S.W.(2d) *789, 793,* in which a writ of error was refused by the Supreme Court of Texas, a very recent case of which I shall have more to say later, because it deals with findings claimed to be in con-

flict in exactly the same respect here urged, the court said: "Suppose the findings for the appellee had been that the appellant was negligent, and that such negligence contributed to appellee's injuries but was not the proximate cause of same; could it be seriously contended that any court would order a judgment entered for plaintiff upon such findings? Is there, then, one rule for the plaintiff and another for defendant .in this character of case? The above quotations demonstrate that there is not, if such a plain proposition needs any demonstration."

In the jurisprudence of our own state we have always recognized the rule, regarded as elementary, that the act relied upon as negligent must appear as the proximate cause of the injury complained of before a plaintiff can recover. In Maestas v. Alameda Cattle Co., 36 N.M. 323, 14 P.(2d) 733, 735, we quoted approvingly from the early case of Lutz v. Atlantic & Pacific R. Co., 6 N.M. 496, 30 P. 912, 16 L.R.A. 819, a definition of proximate cause as that "cause which, in natural and continued sequence, unbroken by any efficient, intervening cause, produced the result complained of, and without which that result would not have occurred." And because a relation of proximate cause between the alleged negligent act of the defendant and decedent's death was not shown by the pleading involved in the Lutz Case, our Territorial Supreme Court held a demurrer thereto was properly sustained. Our adherence to the doctrine of proximate cause as an essen-

tial to recovery in negligence cases is reaffirmed as lately as the case of Gilbert v. New Mexico Construction Company, 39 N.M. 216, 44 P.(2d) 489.

Nor have we ever recognized any distinction in its application to cases involving contributory negligence. In Thayer v. Denver & R. G. R. Co., 21 N.M. 330, 154 P. 691, 695, we said:

"Where an action is predicated upon an omission of duty, in such a case it properly belongs to and is classified in the field of negligence. To such an action contributory negligence on the part of the plaintiff, which continues concurrently with the negligence of the defendant and contributes *proximately* to the injury, is a valid defense." (Italics mine.)

See, also, Thompson v. Albuquerque Traction Co., 15 N.M. 407, 110 P. 552; Spence v. El Paso & S. W. Co., 28 N.M. 132, 207 P. 579; Mayfield v. Crowdus, 38 N.M. 471, 35 P.(2d) 291, 294.

In the case last cited, Mayfield v. Crowdus, decided very recently, we said: "For the reason indicated and for the purposes of this case it must be considered that any negligence of plaintiff contributing directly and *proximately* to cause the injuries complained of will suffice to defeat recovery." (Italics mine.)

I stand now where this court always has stood, unswerving in adherence to the doctrine that proximate causation between the act or omission and the injury is indispensable. either to sustain recovery in the ordinary negligence case or to bar

it where contributory negligence is interposed as a defense.

The "any degree" theory in the law of contributory negligence is condemned by a learned writer on the subject. In 1 Thompson's Commentaries on the Law of Negligence, § 170, pp. 167–169, the author has this to say: "According to the rule which prevails in Courts of Admiralty especially in case of collision, if both vessels are in fault, the loss is divided between their respective owners, according to their respective measure of negligence; but, according to early statements of doctrine in the English Court of Queen's Bench, still frequently repeated in American courts, but really no longer law, in courts of common law, except in two or three jurisdictions, the plaintiff has no remedy if his negligence, that is, if his want of ordinary care, *in any degree* contributed to the injury. Some of the cases say that if the negligence of the plaintiff, or the person killed or injured, contributed in any degree, *how ever slight,* to produce the injury, there can be no recovery. But this doctrine, which visits upon the plaintiff or person injured all the consequences of the defendant's negligence, although the plaintiff's negligence may have been slight and trivial, and that of the defendant gross and wanton, is cruel and wicked, and shocks the ordinary sense of justice of mankind. Such a rule finds no proper place in an enlightened system of jurisprudence."

Nor is it accurate, as Mr. Thompson points out, to say that if a plaintiff by his conduct "contributed" to his injuries, he cannot recover.

"This statement of the principle is incorrect. In many cases where the plaintiff's conduct was to some extent contributory to his injury he has been allowed to recover. In fact, it would be difficult to conceive of any case in which the conduct of the party injured might not, in some sense, be said to have 'contributed' to his injuries." Id. § 218, pp. 212, 213.

"The plaintiff's fault does not affect his right of action unless it *proximately* contributed to his injury. It must be a proximate cause in the same sense in which the defendant's negligence must have been a proximate cause in order to give any right of action." 1 Sherman & Redfield on the Law of Negligence (6th Ed.) § 94.

In this connection we refer also to the illuminating opinion of the Supreme Court of South Carolina in the case of Jeffords v. Florence County, reported in 165 S.C. 15, 162 S.E. 574, 81 A.L.R. 313.

Notwithstanding these statements from texts of the highest standing, as pointed out by Mr. Thompson, decisions are to be found declaring that if plaintiff's negligence contributed "in any degree," or "in the least degree" to cause the injury, he cannot recover. See Goldschmidt v. Schumann, 304 Pa. 172, 155 A. 297; Merrihew's Adm'r v. Goodspeed, 102 Vt. 206, 147 A. 346, 66 A.L.R. 1109. Whereas other decisions representing the great weight of authority hold it to be an erroneous statement of the law to instruct or assert that a plaintiff is

barred of recovery if his own negligence has contributed "in any degree," or "in the least degree," to the injury.

"It is not sufficient to bar an action that contributory negligence may contribute 'in the least degree' or 'in any degree' or that it merely 'contributes' to the accident or happening. It must enter into and form a part of the efficient cause thereof before it will bar an action if one otherwise could be maintained." (Citations omitted.) Carr v. City of St. Joseph (Mo.Sup.) 225 S.W. 922, 923.

See, also, Gaster v. Hinkley, 85 Cal.App. 55, 258 P. 988; Smirnoff v. McNerney, 112 Conn. 421, 152 A. 399; Fulton v. Chouteau County Farmers' Co., 98 Mont. 48, 37 P.(2d) 1025; Liske v. Walton, 198 N.C. 741, 153 S.E. 318; Sharp v. Russell, 37 Ohio App. 306, 174 N.E. 617; Chapman v. Blackmore, 39 Ohio App. 425, 177 N.E. 772; Price v. Gabel, 162 Wash. 275, 298 P. 444.

It is, no doubt, this wealth of eminent authority rejecting as unsound the "any extent" or "slightest degree" doctrine of causation in the law of negligence, whether primary or contributory, to which the prevailing opinion adverts in conceding that "some courts have expressed opinions at variance with those we here express." If so, I do not deem convincing the reason advanced for eliminating "as valueless decisions from jurisdictions where * * * the 'last clear chance' doctrine is available to plaintiff without being pleaded in the complaint." Any implication that a lesser degree of causation than that of proximateness is effectual in states such as New Mexico which require last clear chance to be specially pleaded in the complaint than prevails in states permitting the issue to arise under merely general allegations of negligence and a denial thereof, rests on a false assumption. This court, as shown from the earliest cases dealing with the subject, has supported the rule of proximate causation. And as may be ascertained by a mere reference to them, the following decisions from other states listed in 45 C.J. 1102 as in line with New Mexico in the requirement of specially pleading last clear chance in the complaint, cling with steadfastness to the requirement of proximate causation, to wit: Fulton v. Chouteau County Farmers' Co., 98 Mont. 48, 37 P.(2d) 1025; Chapman v. Blackmore, 39 Ohio App. 425, 177 N.E. 772; Sharp v. Russell, 37 Ohio App. 306, 174 N.E. 617; Rice v. City of Portland, 141 Or. 205, 7 P.(2d) 989, 17 P.(2d) 562; Foster v. Beckman (Tex.Civ.App.) 85 S.W.(2d) 789; Southland-Greyhound Lines, Inc., v. Richardson, 126 Tex. 118, 86 S.W.(2d) 731.

No doubt, as stated by Mr. Thompson, much of the confusion encountered is due to a failure to mark the distinction between negligence of the plaintiff and its causal connection with the result.

"The foregoing cases conduct the mind to a distinction, a failure to regard which has constantly confused the minds of counsel, judges and juries. It is, that the *neg-*

*ligence or fault* of the plaintiff or person injured is one thing, and the *causal connection* between that negligence or fault and the catastrophe is another." 1 Thompson on Negligence, § 229.

In so far as the phase of the doctrine here involved is concerned, we think the formula given in Restatement of the Law, under the subject, "Torts," is sound and represents as satisfactory a statement of the true rule as is to be found. In section 463 of this text contributory negligence is defined in the following language, to wit: "Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection and which is a legally contributing cause, co-operating with the negligence of the defendant in bringing about the plaintiff's harm."

And at section 465 of the text just cited, the principle governing causal connection between harm and negligence is succinctly stated, as follows: "The plaintiff's negligent exposure of himself to danger or his failure to exercise reasonable care for his own protection is a legally contributing cause of his harm if, *but only if,* it is a *substantial factor* in bringing about his harm and there is no rule restricting his responsibility because of the manner in which his conduct contributed to his harm." (Italics mine.)

The rules determining whether plaintiff's conduct is a substantial factor in bringing about his harm are set out in sections 432 and 433 of the same work. Of course,

the jury which heard the case at bar was not instructed in the language of this formula. It was properly instructed, however, upon the law of contributory negligence and had "proximate cause" correctly defined for its guidance as noted in the majority opinion. No exceptions were saved to such instructions.

The prevailing opinion challenges the application of these authorities to the present case in a dual fashion. First, it says the question of "proximateness" was settled by the Legislature in the enactment of the statute requiring taillights, under the so-called "probability" test in its relation to causation. Second, that absence of the taillights could not have contributed at all to cause the accident without having contributed proximately. Thus is proximateness brought to the aid of the special finding; under the first view, as a judicially declared though unexpressed legislative intention; under the second view, by sheer process of judicial interpretation. Its presence is laid upon the shoulders of the Legislature under one view. The court must accept responsibility for it under the other. The jury whose peculiar province it is to settle the question is ignored under both views.

The first view, in my opinion, rests upon a misuse of the probability test in determining legal causation. The second overrides controlling principles applicable in determining whether general and special verdicts are in irreconcilable conflict. I shall deal with these questions in the order of their statement.

If I correctly understand the prevailing opinion, its reasoning runs thus: Where no fixed standard of conduct is prescribed, the test of negligence is the conduct of an ordinarily prudent person under the circumstances. How the average man would have reacted to the same circumstances is determinable by what he should have foreseen as the probable consequences of his conduct. Under proper instructions, with this test in mind, the issue of negligence will be submitted to the jury for its determination.

But, says the prevailing opinion, "foreseeability" or "probability" is not alone a test of negligence. Under what it pleases to term the prevailing rule, it is a test also of proximate causation. Therefore, when the jury convicts the defendant of negligence, thereby resolving the "probability" test in plaintiff's favor on that issue, by the same token it has resolved the question of "probability" in his favor on the issue of proximate causation. Hence, where the act or omission charged is the violation of a statutory duty, amounting to negligence per se, and the jury finds that injury of a kind sought to be prevented did happen, and was contributed to, however slightly, by the claimed violation, the issue of negligence being settled by the Legislature, the issue of proximacy of causation is likewise decisively resolved and will be so declared as a matter of law. It is this specious line of reasoning alone which, attaching "proximacy" to the degree of contribution otherwise intended by the special verdict, lifts it to a position of irreconcilable conflict with the general verdict. The conclusion announced is without support in reason and logic.

The fallacy of the argument consists in the second application of the test of "probability" upon the issue of proximate cause. As a test of negligence, it has exhausted its decisive character and may not properly be re-employed with like force in settling the issue of proximate causation. Eminent writers upon the subject under discussion present this position with such forceful logic that I shall be content with a few quotations from them.

Judge Jeremiah Smith, in one of the most analytical and best reasoned articles yet written upon the subject, "Legal Cause in Actions of Tort," 25 Harvard Law Review 241, et seq., says:

"In every action for negligence, upon the same state of facts two distinct issues may arise: one, 'the preliminary issue of negligence *vel non*'; the other, if negligence is found to exist, the issue as to the causative effect of that negligence. * *

"A probability that some harm may happen, not necessarily the specific harm which did actually result, is legally essential to raise a duty of care and thus establish the existence of negligence. But, if negligence is thus made out, such probability is not a legal requisite to establish the existence of causal relation between defendant's negligent conduct and plaintiff's damage.

"It is not generally requisite to show for any purpose the probability of the specific damage which actually resulted. It is not

necessary to show a probability of some damage except when the charge is one of negligence; and then it is necessary *only for the purpose of establishing negligence.* It is not an essential legal element in the succeeding steps, (1) of establishing the occurrence of damage, and (2) of establishing the existence of causal relation between defendant's negligence and plaintiff's damage. Such probability is no more essential to the existence of causal relation in negligent torts than in intentional torts. As to both intentional torts and negligent torts, in making out the existence of causal relation, probability is a circumstance which may be weighed by the jury, in connection with the testimony, in passing upon the question of fact—whether the causal relation existed. And probability or improbability might sometimes have practically a decisive effect. But it would not be a *legal* test; would not, as a matter of law, be decisive. \* \* \*

"Because probability is to a certain extent essential to establish the existence of negligence, it seems supposed by some persons that it must also of necessity be essential to establishing the existence of causal relation between defendant's negligence and plaintiff's damage. But the tortious nature of defendant's conduct and the causative effect of that conduct *are entirely distinct matters;* and what is a requisite element as to the first subject is not necessarily so as to the second." (Italics mine.)

Mr. Albert Levitt, in his article on "Cause, Legal Cause and Proximate Cause," 21 Mich.Law Rev., at pages 42 and 43, says: "A negligent act is one which is likely to result in some sort of an injury according to the time, place and circumstances where the act is performed. Negligence is forbidden by common law; but nothing is negligent unless it was foreseeable, at the time of acting, that the act was of a harmful type. If harmful, then it was forbidden; if not harmful, then it was not forbidden. Foreseeableness determines *prohibition;* it does not determine causation; nor does it determine proximate causation."

In the much-quoted case of Christianson v. Chicago, St. P., M. & O. Ry. Co., 67 Minn. 94, 69 N.W. 640, 641, Mr. Justice Mitchell gives a terse statement of the true rule. He says: "What a man may reasonably anticipate is important, and may be decisive, in determining whether an act is negligent, *but is not at all decisive* in determining whether that act is the proximate cause of the injury which ensues." (Italics mine.)

Perhaps no clearer expose of the false logic in employing "probability" as a decisive test upon the question of proximate causation is to be found anywhere than in treatments of the subject by Prof. Leon Green who is quoted from in the prevailing opinion. In his article "Are Negligence and 'Proximate' Cause Determinable by the Same Test?" appearing in volume 1 of Texas Law Review, page 243 et seq., Prof. Green becomes the severest critic of the premise upon which rests

almost the entire argument of the prevailing opinion on the question of proximate causation. Among other things, he says, at page 246:

"It is submitted that the confusion to be found in the opinions of our own as well as those of other courts has arisen from a failure to recognize affirmatively that in negligence cases there are at least two distinct problems. First, the negligence itself, the wrongful conduct of the defendant, must be made to appear. Ordinarily this is done by use of the universal common law test of negligence, i. e., should the defendant as a probable result of his conduct have foreseen harm to the plaintiff. If so, and the defendant failed to use reasonable care to prevent the hurt, the wrong of defendant has been established. This is the legitimate use of the 'probable consequence' rule. By this use of the test plaintiff makes out the first element in his case. After this is established there still remains the second problem, that is, *what harm has plaintiff suffered from defendant's wrong.* To attempt to make a second use of the 'probable consequence' rule in order to determine this issue is to pervert its use. It was not designed for double duty. It has only one proper use."

For a further discussion of this subject by Prof. Green, see section 5 of chapter 4 of his work, "Rationale of Proximate Cause," page 122 et seq.

The sole reason put forward in the prevailing opinion for rejecting or disregarding these destructive criticisms against use of the "probability" test in determining proximate causation is that they were provoked by objections to the *limit* it placed on plaintiff's recovery; that it is a good test for the affirmative of the proposition, i. e., that a defendant is responsible for the foreseeable consequences of his wrong, and should be retained for such cases, even though it be discarded on the negative side, i. e., nonliability for unforeseeable consequences.

This argument overlooks the fact that by reason of its inherent unsoundness the writers quoted discard "probability" in entirety as a decisive test, notwithstanding it would in the majority of cases function satisfactorily on the affirmative of the proposition. Prof. Green says: "If the test as usually stated is in fact only *half* a test; if its range is too short to cover a large class of cases where justice would demand a recovery, then it should be discarded and some test adopted which will not fail in those cases most difficult of determination." 1 Tex.Law Review, 246.

The reason underlying rejection of the "probability" test in causation is its unreliability. After the event, it sometimes was seen that unforeseeable harm resulted in an unbroken chain of causation from a given act, so that all question of proximacy was removed. And yet, applying the test, recovery was denied. Likewise, however probable a given result might have seemed before the event, it was not always the result which actually did

happen. Quoting the language of Judge Jeremiah Smith in the article above mentioned: "Where there is a conflict of direct testimony, jurors, as sensible men, may allow some weight to probabilities in coming to a conclusion as to whether a certain fact really happened. But there is no rule requiring them, *as matter of law,* to find that the result which was the more probable was the result which actually occurred. They are at liberty to find, and may sometimes be fully justified in finding, that an improbable story is true, or that a probable story is false." 25 Harv. Law Rev. 244.

It thus appears that as a decisive factor (the effect given it here by the majority) the probability test is rejected in its entirety. And why not? If the test be bad as imposing an unwarranted *limitation* on plaintiff's recovery in those cases in which the "improbable" does happen, is it not equally bad in *charging* the defendant in those cases where the "probable" does not happen? The question furnishes its own answer. The critics of the test do not say that "probability" may not play an important part in the *jury's* consideration of proximate causation. As Judge Jeremiah Smith points out, *with the jury* it may "have practically a decisive effect." 25 Harv. Law Rev. 243. It is its province to say whether it shall have such effect.

"Before the question of causation can be submitted to the jury, there is a preliminary question to be decided by the judge; namely whether upon the evidence twelve honest men can reasonably find the existence of the causal relation. It is for the judge to say whether the jury *can* reasonably so find; and then, if he decides in the affirmative, it will be for the jury to say whether they *do* so find. The judge has to say whether on the evidence causal relation *may be* reasonably inferred; the jurors have to say whether from the evidence, if submitted to them, the causal relation *is* inferred by them." Judge Jeremiah Smith in 25 Harvard Law Review, 306.

This court, in Gilbert v. New Mexico Construction Co., 39 N.M. 216, 44 P.(2d) 489, seemingly relied upon in the prevailing opinion as lending approval to the probability test in determining proximate causation, goes no further than to speak of it as a proper matter for inquiry by the jury.

The majority opinion willingly accepts it as the prevailing rule to treat the *existence* of negligence and *causal relation* as the same problem, to be determined by the same formula. The more important inquiry is whether it is the true rule. I think its unsoundness has been demonstrated. And failure of American Law Institute in its Restatement of the Law of Torts, §§ 433 and 435, to incorporate the "probability" test casts doubt on it as the prevailing rule. In so far as it gives effect to the natural and probable consequence formula at all in determining whether the actor's conduct is a substantial factor in producing the harm, it

is from the standpoint of what Prof. Green was pleased to term "hindsight" rather than "foresight." 1 Tex.Law Rev. 248.

Before leaving discussion of "probability" as a test of proximate causation, one other matter requires consideration. The prevailing opinion says: "The failure of the minority to duly appreciate that the determination of 'proximateness' as a characterization of 'cause' requires the determination of the quality of conduct involved is we believe the reason for their inability to agree with us. Proximateness is qualitative and not quantitative."

This may be accepted as a partially accurate statement of one reason for disagreement with the prevailing opinion. I do not think the issue of proximate causation or "proximateness" is qualitative at all. On the contrary, I submit that the determination of legal causation presents a *quantitative* rather than a *qualitative* issue. The correctness of this conclusion is affirmed by the very nature of the inquiry putting the issue: What is the extent of causal relation between the act and the harm? In other words, *how much* did the act contribute to bring about the harm? Was its contribution "appreciable," "substantial"? Obviously, such an inquiry is quantitative. It is declared so by Prof. Leon Green. In his Rationale of Proximate Cause, at page 122, he says: "Determining whether a rule covers a loss is a wholly different process from that of

seeking cause and effect, and one which is inescapable in any case, under whatever guise it may be considered. One is qualitative, the other quantitative. Neither can be translated into terms of the other, however persistently it may be attempted."

. Again at pages 140 and 141 of the same work, Prof. Green says: "The 'average man' and the 'substantial factor' tests allow the widest range—limited only by the court's power to bound their extremes—but present ideas sufficiently concrete to enable the jury to grasp their meaning and to make use of them in determining the respective problems of culpability and causation. Neither has any place other than in its own formula. They are not convertible terms. The 'average man' does well enough as a means for determining the *quality* of defendant's conduct. The 'substantial factor' will do equally as well for determining the *extent* of such conduct. One is a qualitative measure; the other a quantitative measure; just as the fact of wrongdoing is one for qualitative analysis, while the fact of causation is one for quantitative analysis. The two problems are on different planes; they have resemblances, but they are not identical."

In order that this discussion may not seem purely academic, the exact point at which the majority are led into error by this misapprehension will be pointed out. The prevailing opinion says: "It being found by the jury that the violation of the statute did contribute to cause the collision, and the *court* having already determined

that the statute was designed to prevent just that sort of collision, then using the same process the *court* was circumstanced to find that the quality of proximateness attached to the cause. * * * In other words, the *court,* having found that if the plaintiff violated the statute, he was under the facts guilty of negligence as a matter of law, was by the same token able to say that the quality of proximateness attached to the cause." (Italics mine.)

If the majority had correctly conceived that the true inquiry at this point is quantitative rather than qualitative, an ascertainment of the degree or extent of causation rather than an inquiry touching quality of conduct, the use of a measuring rod to determine extent rather than a microscope to detect kind, I believe they would view it as a question of fact for the jury rather than one to be resolved by the court as a matter of law.

In the use made of "probability" as a decisive test on the question of proximate causation, the prevailing opinion follows to an extent easily discernible the doctrine of Johnson v. Boston & Maine R. R., 83 N.H. 350, 143 A. 516, 61 A.L.R. 1178. It was there held in effect that a statute prohibiting any person, not licensed, from operating a motor vehicle upon the state highways, rendered unlicensed drivers entitled to no other right than exemption from reckless, wanton, and willful injury. Such a doctrine carries no humanitarian appeal. It is classified as a minority doctrine which has been severely criticized both by textwriters and the courts of other states. It is sometimes mistakenly referred to as the "Massachusetts doctrine." For criticisms of the doctrine, see 27 Mich.Law Rev. 966; 24 Ill.Law Rev. 481; Wilson v. Rogers, 140 Kan. 647, 38 P.(2d) 124; Gilman v. Central Vermont R. Co., 93 Vt. 340, 107 A. 122, 16 A.L.R. 1102, and case note at page 1108.

The objection to the doctrine is both its harshness and that it declares an unexpressed legislative intention. The prevailing opinion does not go so far as the New Hampshire court in saying what the Legislature has not expressly said, that the violator of the statute is denied civil relief for a relevant injury except where wantonly or willfully inflicted. That is to give full effect to the statute as declaring causation. But it does say and hold that if causation in fact "to any extent" be found, any want of required proximity may be deduced from the statute itself, as a matter of law. This proposition I unhesitatingly and vigorously challenge.

Turning now to the treatment in the prevailing opinion of the general and special verdicts. In the beginning, I stated the majority opinion rested upon one of two views, one having to do with proximate causation, the other relating to the interpretation of the general and special verdicts. An application to the case before us of principles controlling the latter question necessarily involves an inquiry whether the jury's special finding that plaintiff's negligence contributed to some extent

must be interpreted as a finding that it contributed proximately to cause the injury.

The first pertinent inquiry presenting itself under this phase of the case is: Does the special finding disclose irreconcilable conflict with the general verdict? Unless it does, the latter controls. Leyba v. Albuquerque & Cerillos Coal Co., 25 N.M. 308, 182 P. 860; Thayer v. Denver & R. G. R. Co., 25 N.M. 559, 185 P. 542; Rheinboldt v. Fuston, 34 N.M. 146, 278 P. 361. Otherwise, the former is decisive and judgment should be entered pursuant thereto. "Trial Court Rules", § 70-103. Of course, no conflict should be declared until effort has been made to reconcile seeming inconsistency. The special finding must exclude every reasonable inference authorizing the general verdict. 64 C.J. 1177, § 965, "Trial." National Metal Edge Box Co. v. The Hub, 89 W.Va. 101, 108 S.E. 601; City of Wabash v. Bruso, 186 Ind. 637, 117 N.E. 867. Moreover, no presumptions will be indulged in favor of answers to special findings as against the general verdict. Iowa City State Bank v. Biggadike, 131 Ark. 514, 199 S.W. 539; Kingan & Co. v. Albin, 70 Ind.App. 493, 123 N.E. 711.

All that is required to demonstrate the fallacy of the majority view in this case is to apply to it the very principles touching construction of general verdict and special findings approved in the prevailing opinion. The majority correctly state that the special finding controls the general verdict if in irreconcilable conflict with it; but that before declaring a conflict, due effort should be made to reconcile apparent inconsistency; and (quoting the majority opinion) they continue: "In order to prevail, the special finding should clearly exclude every reasonable conclusion that would authorize the general verdict."

An affirmative answer by the jury to the special inquiry whether plaintiff's negligence contributed to *any* extent to cause the collision certainly does not exclude the reasonable conclusion that the extent of contribution intended was simply as a "remote cause"; as "merely an antecedent occasion, condition or attendant circumstance of the injury." 45 C.J. 975. This must be so in view of the general verdict in plaintiff's favor under instructions defining with care the meaning of proximate cause and charging the jury that no verdict in plaintiff's favor was warranted if his negligence be found *proximately* to have contributed to cause the injury, and as an element without which the injury would not have occurred.

The instructions, in charging the jury that plaintiff's negligence must have contributed proximately to cause the injury before operating to defeat recovery, and in defining proximate cause, in effect told the jury that any causal connection between plaintiff's omission and the injury which did not attain the degree of proximacy was ineffective to defeat recovery. Fulton v. Chouteau County Farmers' Co., 98 Mont. 48, 37 P.(2d) 1025. The general verdict in plaintiff's favor said, in legal effect, as

unmistakably as if expressly declared: "We find defendant's neglegence *the* proximate cause of the injury and plaintiff's negligence, although causal, not proximately so, as that term has been defined to us." Unquestionably such is the effect of the general verdict. Such an answer as that here given to the special interrogatory submitted conceivably rests within a general verdict in plaintiff's favor in *every* negligence action to which contributory negligence is pleaded as a defense. Fulton v. Chouteau County Farmers' Co., supra.

Here, before coming in conflict with the general verdict, the special finding must have supplied for it the word "proximately" as the extent of contribution intended. How is it to get this word except by implication or presumption? There is no other means of supplying it. The jury did not say it. And in saying it for the jury, the court performs a jury function. Defendant's counsel was content to submit his question without embracing this indispensable element. The majority, although finding no fault with the well-recognized rule of interpretation that no presumptions will be indulged in favor of answers to special findings as against the general verdict, in reaching the conclusion announced necessarily do the very thing which the rule forbids. This is so because the word "proximately" is either added to the special finding as a factual implication or presumption, or it is held to belong there as a matter of law. However viewed, the word can only get into the special finding by presumption and the rule mentioned denies it access in any such manner.

Other authorities than those cited, sustaining the correctness of rules announced by the majority for interpreting seemingly conflicting special and general verdicts, which rules they approve but do not follow, are: Koskela v. Albion Lumber Co., 25 Cal.App. 12, 142 P. 851, 857; Conwell v. Tri-City Ry. Co., 135 Iowa, 190, 112 N.W. 546; Haddon School Tp. of Sullivan County v. Willis (Ind.Sup.) 199 N.E. 251; Samson v. Zimmerman, 73 Kan. 654, 85 P. 757; Lesher v. Carbon Coal Co., 127 Kan. 34, 272 P. 155; Benedict v. Carter State Bank, 54 S.D. 14, 222 N.W. 500, 505.

In Koskela v. Albion Lumber Co., supra, is found a very clear statement of the principle for which I contend. The court said:

"There was a general verdict for plaintiff and against defendants. The rule is that the general verdict imports a finding in favor of plaintiff on all the averments of the complaint material to his recovery. Merritt v. Wilcox, 52 Cal. 238, 242.

" 'The presumption is that the general verdict covers findings in plaintiff's favor upon all the facts necessary to be proved under the issues not covered by the findings.' Clementson on Special Verdicts, p. 135.

"And all presumptions are in favor of the general verdict for the plaintiff, and it must control if the special verdict is not absolutely irreconcilable therewith. * * * Obviously, as the general verdict is an ex-

press finding for plaintiff on all material issues, it should not be overthrown unless the special findings are utterly at war with it."

In Benedict v. Carter State Bank, supra, the court said: "Here likewise we are unable to see any inconsistency between the fact specially found by the affirmative answer to this interrogatory and the general verdict, particularly in the light of the clear rule of law that no presumptions will be indulged in favor of inconsistency, and that, as stated by the California court: '* * * We do not think the court should strain the language of a finding to make out a case of conflict. The finding should be reconciled if it can be reasonably done, and be so construed ut res magis valeat quam pereat.' [Italics mine.] Alhambra, etc., Co. v. Richardson (1887) 72 Cal. 598, 14 P. 379."

In support of the contention that contributory negligence need not be specially found to have contributed proximately to cause the injury to overthrow a general verdict in plaintiff's favor, if it be found to have contributed at all, the majority rely upon Lathrop v. Miller, 132 Kan. 425, 295 P. 722; Behymer v. Mosher Mfg. Co. (Tex.Civ.App.) 192 S.W. 1148; Hines v. Foreman (Tex.Com.App.) 243 S.W. 479; Bullard v. Ross, 205 N.C. 495, 171 S.E. 789 and Crane v. Carswell, 203 N.C. 555, 166 S.E. 746. The North Carolina decisions may be dismissed with the statement that the point is decided without even discussing it. In addition to what is later

said about the Texas cases, it may here be noted that the doubt expressed in the quotation in the prevailing opinion from the Behymer Case, whether negligence could contribute at all without contributing proximately to an injury, on its face is pure dictum, the court saying that, regardless of that question, the case was ruled by another point.

In Lathrop v. Miller, supra, the Supreme Court of Kansas with but slight discussion holds that a special finding that plaintiff's own negligence "contributed to the injury complained of" overcomes a general verdict in her favor. Mr. Thompson in his Commentaries on the Law of Negligence, Vol. 1, § 218, says of such a declaration: "This statement of the principle is incorrect. In many cases where the plaintiff's conduct was to some extent contributory to his injury he has been allowed to recover."

In the Kansas case the court was able to find conflict between the special finding and the general verdict after, but only after, interpolating the word "proximately" into the special finding, just as the majority have supplied it here. The conclusion that the court was warranted in supplying this word seems thoroughly out of harmony with other decisions of the same court holding that all facts in issue which are not specially found shall be presumed to have been determined in accordance with the general verdict. Samson v. Zimmerman, supra, and Lesher v. Carbon Coal Co., supra.

Whatever support the majority may consider is afforded by the Texas cases, Behy-

mer v. Mosher Mfg. Co., supra, and Hines v. Foreman, supra, is withdrawn, I think, by the opinion in the very recent case of Foster v. Beckman (Tex.Civ.App.) 85 S.W. (2d) 789, 791, heretofore cited, in which the Supreme Court of Texas denied a writ of error. In this case the defendant's negligence was in driving his motortruck on the wrong side of the road and at an excessive speed. The plaintiff's contributory negligence was in driving his truck with only one headlight burning. This constituted violation of a statutory duty and was negligence per se. The points raised and determined are identical with those presented in the case at bar. Hence, I quote from the opinion at some length:

"The jury in answer to special issues found that appellant was driving his truck on the wrong side of the public road at forty-five miles per hour. The testimony of appellee was that in passing, appellant's truck 'side-swiped' his own, striking appellee's arm which was resting on the side of the truck cab and injured it so severely he lost it by amputation. One of the defensive theories pleaded and proven was that appellee at the time of the accident was driving his truck at about dark with only one headlight burning. The court gave appellant's special requested charge, which was as follows:

" 'Gentlemen of the Jury:

" 'You will answer the following questions "yes" or "no" from a preponderance of the evidence.

" '(a) At and immediately prior to the time of the collision in question did the plaintiff, Joe Beckman, have only one headlight burning on the truck he was driving?

" '(b) If you answer the preceding question "yes," then answer the following question:

" 'Was the act of plaintiff, Joe Beckman, in driving his truck at the time and place in question with only one headlight burning, negligence as that term is defined in the Court's main charge?

" '(c) If you answer the preceding question "yes," then answer the following question:

" 'Was such negligence on the part of Joe Beckman a proximate cause of his injuries?

" '(d) Did the act of Joe Beckman in driving his car with only one headlight burning, at and immediately prior to the time of the collision, if you have answered he was so doing, contribute to his injuries?'

"The jury answered subdivisions (a) and (b) 'yes,' (c) 'no,' and (d) 'yes.' The appellant contends here that such answers entitled him to a judgment. We quote from his brief:

" 'Violation of a positive statutory rule is, of itself, contributory negligence.'

" '* * * it is not necessary to defeat recovery on the ground of contributory negligence to show that the plaintiff's negligence was a proximate cause of his injury. This may sound like an unusual statement, but we have ample authority to support it.'

"To assert that proximate cause is not an element of contributory negligence is indeed

an unusual statement, but not quite so remarkable as the fact that appellant cites expressions from authorities which on their face support his theory. We do not think there is any doubt that the Supreme Court has pointedly and repeatedly held contrary to appellant's contention, and that such holdings comport with sound reason and the most elementary principles of justice and right. * * *

"Nor do we think that said findings were conflicting, as contended by appellant, when given their proper legal effect. True, the jury found that appellee's negligence 'contributed to his injury.' *This charge was cast into language selected by appellant. He requested it. He deliberately chose to ignore the issue of proximate cause, sincerely believing then, no doubt, as his counsel yet do, that such was not a necessary element to be submitted.* The language of Judge Short in Koons v. Rook (Tex.Com.App.) 295 S.W. 592, at page 597, completely answers this contention. We quote: 'However, even though the conduct of the plaintiffs amounted to negligence and contributed to the injuries received by them, yet, unless this conduct was a proximate cause of the injuries inflicted upon the plaintiffs by the defendant, it would not defeat a recovery.'" (Italics mine.)

The opinion in this case interprets the opinion of the Texas Commission of Appeals adopted by the Supreme Court of that state in Hines v. Foreman, a case strongly relied upon by the majority. If the Texas Court of Civil Appeals had misinterpreted the opinion in the Hines Case, since the interpretation of it was decisive, the Supreme Court would have granted a writ of error. Hence, the opinion in Foster v. Beckman, as approved by the Supreme Court through its denial of application for writ of error, is the latest intimation of views by that court on the subject and, in my opinion, affords a complete answer to the contentions sustained by the majority in the case at bar.

This case, the nearest in point found in the books, dealing with the precise point, presented in the exact way it here arises (upon asserted conflict between the general verdict and a special finding), decides the question in accordance with the contention here made. Its reasoning is unanswerable. It is dismissed by the prevailing opinion with a statement that its facts are different. There is this difference. In Foster v. Beckman the contributory negligence relied on was violation of a statute requiring headlights. In the case at bar, it is violation of a statute requiring taillights. Truly, this circumstance can make no difference in the application of controlling principles.

Other "taillight" cases, supporting the views here expressed, although arising where the issues were presented under a general charge, are Tendoy v. West, 51 Idaho, 679, 9 P.(2d) 1026; Landis v. Wick (Or.) 57 P.(2d) 759, 761; Gleason v. Lowe, 232 Mich. 300, 205 N.W. 199; Martin v. Herzog, 228 N.Y. 164, 126 N.E. 814, 816; Woodley & Collins v. Schuster's Wholesale Grocery Co., Inc., 12 La.App. 467, 124 So. 559, affirmed Woodley & Collins v. Schusters'

Wholesale Produce Co., 170 La. 527, 128 So. 469. These authorities emphasize that the question whether plaintiff's negligence contributed proximately to cause the injury is essentially a jury question.

The error into which the majority have fallen may be rendered obvious by reversing the position of the parties now before us in a supposed case growing out of this very accident. Let us suppose the present defendant sues plaintiff for injuries suffered when he, defendant, propelled his car into that of the present plaintiff. The negligence charged is absence of taillights. The plaintiff (now a defendant) does not interpose a plea of contributory negligence, simply denying, contrary to the proof, that his car was without taillights. The trial court, over his specific objection that the instruction should charge that his negligence must be found to have been the proximate cause of the collision, instructs: "Gentlemen of the jury: You are instructed that if you believe from the evidence that the absence of tail lights on defendant's car, if you find such absence, *contributed to any extent to cause the collision,* you will return a verdict in favor of the plaintiff."

The plaintiff recovers and defendant appealing to this court assigns a single error, to wit, the trial court's ruling on his objection to the supposed instruction, quoted above. This court, now holding through the majority that the identical language italicized in the supposed instruction appearing in the special finding before us is operative to defeat recovery as the parties are now

aligned, of necessity would be compelled to hold it sufficient to sustain recovery when the positions are reversed as in the supposed case.

"Is there, then, one rule for the plaintiff and another for defendant in this character of case? The above quotations demonstrate that there is not, if such a plain proposition needs any demonstration." Foster v. Beckman, supra.

The judgment of the lower court would have to be affirmed. This is true, whichever way we view the proposition. For, if negligence contributing to any extent to cause an injury is efficacious, the supposed instruction is correct. If the degree of causation required to render it so is "proximate," any error in the instruction is harmless under the facts here shown, because the majority are holding this same negligence cannot have contributed at all to cause the injury, without having contributed proximately to such end.

Let us pursue this thought a step further. The jury answered affirmatively the inquiry whether absence of the taillights contributed "to any extent" to cause the injury. Suppose the added inquiry "to what extent?" had been put and the jury's answer had been "as a remote cause" (Fulton v. Chouteau County Farmers' Co., supra); as "merely a contemporaneous condition" (Landis v. Wick, supra); or "as merely an antecedent occasion, condition or attendant circumstance of the injury" (45 C.J. 975). Would the majority still affirm the right to disregard the general verdict

finding defendant's negligence *the* proximate cause? Or would they, in the face of such irrefutable proof of what the jury meant by the special verdict, disregard it as immaterial and heed the general verdict? I can only believe they would do the latter. In legal effect, as the matter stands, the jury no less certainly has answered the special interrogatory in the manner supposed.

The majority will concede that a rear-end collision, such as that here involved, could have occurred under such circumstances as to render immaterial the special finding made, even in the face of the views entertained by them. Suppose, for instance, the collision occurred underneath a powerful arc light at a street intersection on a well-lighted city street. The plaintiff's car was without taillights, to be sure. But that would afford no excuse for defendant running into him, for he could see him notwithstanding absence of the taillights. Under such a state of facts, the majority would unquestionably interpret the special finding to mean no more than that absence of the taillight contributed as a remote cause, "merely as a contemporaneous condition," Landis v. Wick, supra, not as a proximate cause, cf. Larsen v. Webb, 332 Mo. 370, 58 S.W. (2d) 967, 90 A.L.R. 67.

For aught we know, a case analogous to that supposed may have been before the jury. The evidence is not before us. We review the case on the record proper. The evidence may disclose a night when the moon shone so brightly as to have enabled defendant to see plaintiff's car ahead of him much in excess of the distance of visibility required of the statutory taillight. Again, the evidence may carry an admission by defendant that he observed plaintiff's car while 500 feet to the rear of it, or at such a distance short of 500 feet as to render it obvious that absence of the taillights was not a proximate cause of the collision. We are ignorant of what the evidence discloses because, as stated, it is not before us.

Even if defendant had seen fit to bring up the evidence, it could not aid him in this particular. It may not be looked to for determining inconsistency between the general verdict and a special finding. 64 C.J. 1182. Although of no aid to defendant, the plaintiff is assisted by what it may show. The court can and should "consider in aid of the general verdict, all the material facts which were provable under the issues, and will presume they were proved." Id. 1182. If such facts as those supposed were before the jury (and they are within the issues), the majority would be compelled to withdraw the presumption indulged in favor of the special finding.

The case of Padilla v. Atchison, T. & S. F. Ry. Co., 16 N.M. 576, 120 P. 724, is reviewed in the prevailing opinion in its relation to this case. It holds the burden of proof is on the defendant to establish contributory negligence on plaintiff's part. Operative contributory negligence means more than mere negligence. The term

often is used merely to indicate that it is negligence of a plaintiff that is meant. Such was its obvious use in the sentence quoted from the Padilla Case in the prevailing opinion. "Proof of negligence in the air," as said in Martin v. Herzog, supra, will not do. So that, the Padilla Case, as heretofore understood by the bench and bar of this state, holds not alone that the defendant has the burden of proving negligence on plaintiff's part, but that such negligence contributed to the injury as a proximate cause thereof.

The reasoning employed by the majority to explain the Padilla Case as effectually overrules it in its relation to cases involving statutory violations by a plaintiff as if the court had expressly so declared. For of what avail to tell a plaintiff his adversary has the burden of proving him contributorily negligent, if he must also be told that because the injury to him is of a kind the statute violated was designed to prevent, a presumption of proximateness between the violation and such a result arises under the statute as a matter of law, and that he, the plaintiff, must proceed to show the violation did not so contribute. The opinion says: "While the reasons for the rule that there is a presumption that a plaintiff has been in the exercise of due care are forceful, there is no presumption that his proven negligence eventuating into a result consistent therewith did not proximately contribute to the result. Considerations of common sense, logic, convenience and precedent are to the contrary and strongly support the view that the negli-

gence and a consistent result being shown, the presumption is that the result was proximate."

Obviously, this puts the burden on the plaintiff to establish that his negligence was not a proximately concurring cause. For, how can defendant have the burden if he is to prevail on the mere absence of negative presumptions? It may be admitted there is no presumption that proven negligence of the kind mentioned did not proximately contribute to the result. This does not aid defendant in sustaining his burden, for certainly there is none that it did so contribute.

Some of the remarks in Martin v. Herzog, supra, are explained by the Supreme Court of Oregon in Landis v. Wick, supra, as due to the fact that in New York, contrary to the rule in Oregon and as well in New Mexico, the burden is on plaintiff to establish his freedom from contributory negligence. The Oregon court also points out in the Landis Case that in support of the statement from 9 Blashfield, Cyclopedia of Automobile Law (Permanent Ed.) § 6130, quoted in the prevailing opinion, only two cases are cited, one of which is Martin v. Herzog. All that Judge Cardozo holds in this case is that proximately causal connection between a collision and lack of lights may be inferred *by a jury* where nothing more appears in the evidence than a collision occurring more than an hour after sunset between a car traveling in a certain direction and an unseen car ahead proceeding in the same direction, without.

lights; not that the jury *must* so infer. 25 Harvard Law Review, 306; Hepp v. Quickel Auto & Supply Co., 37 N.M. 525, 25 P.(2d) 197.

For the reasons given, I dissent.

BRICE, J., concurs.